UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MANUEL GARCÍA CASTRO, et al.,    )
    )
    Plaintiffs,    )
    )
    v.    )    No. 3:20-cv-01065-JAW
    )
COMMONWEALTH OF PUERTO RICO,    )
    et al.,    )
    )
    Defendants.    )

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, the Senate of Puerto Rico and its President move for summary judgment on plaintiffs' allegations of disability discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq., and Puerto Rico Law 136-1996. The court grants summary judgment to the Senate and its President because they are entitled to judgment as a matter of law based on the uncontested facts before the court.

## I.    PROCEDURAL HISTORY

On February 5, 2020, Manuel García-Castro and Anixa Santiago-Rivera (Plaintiffs) filed a complaint against the commonwealth of Puerto Rico; Carlos J. Mendez-Nunez, acting in his official capacity as Speaker of the House of Representatives of Puerto Rico;  Maite Oronoz-Rodriguez, acting in her official capacity as the Chief Justice of the Puerto Rico Supreme Court; Thomas Rivera-Schatz, acting in his official capacity as the President of the Senate of Puerto Rico; Wanda Vazquez-Garced, acting in her official capacity as the Governor of Puerto Rico;

and the Financial Oversight and Management Board for Puerto Rico.[1]  *Compl.* (ECF No. 1).   Plaintiffs sought declaratory, injunctive, and other relief including compensatory damages, to remedy alleged unlawful discrimination in violation of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and Puerto Rico Laws 136-1996 and 266-2018.  *Id.* at 1, 21-24.

In the following months, Defendants separately filed several motions to dismiss and motions to join each other's motions to dismiss.  *See Mots. to Dismiss* (ECF Nos. 38, 40, 42, 43); *Mots. to Join* (ECF Nos. 44-47).  On November 2, 2020, Plaintiffs amended their complaint.   *Am. Compl.* (ECF No. 52).   Thereafter, Defendants filed motions to dismiss the amended complaint and to join each other's motions to dismiss.  *See Mots. to Dismiss* (ECF Nos. 53, 60, 68); *Mots. to Join* (ECF Nos. 70, 71, 78).  Plaintiffs opposed the motions to dismiss.  *See Resps. in Opp'n* (ECF Nos. 72, 74, 79).  On January 28, 2021, after Plaintiffs filed their amended complaint and Defendants updated their motions to dismiss, Judge Jay A. García-Gregory, the presiding judge at the time, deemed the first set of motions moot.  *Order* (ECF No. 87).

On September 23, 2021, Judge García-Gregory issued an opinion that granted in part and denied in part Defendants' second set of motions to dismiss, dismissing several claims in the amended complaint.  *Mem. and Op.* (ECF No. 97); *Partial J.*

---

[1]      Periodically, the Court acted pursuant to Federal Rule of Civil Procedure 25(d) to substitute the correct name of state officials as they succeeded to office.  On March 15, 2021, the Court substituted Rafael Hernández Montañez, in his official capacity as Speaker of the Puerto Rico House of Representatives, for Carlos Méndez Núñez.  *Order* (ECF No. 92).  On August 16, 2023, the Court substituted Jose Luis Dalmau Santiago, in his official capacity as President of the Puerto Rico Senate, for Thomas Rivera Schatz, and Pedro Rafael Pierluisi Urrutia, in his official capacity as Governor of Puerto Rico, for Wanda Vazquez Garced.  *Order* (ECF No. 241).

(ECF No. 98).  Specifically, Judge García-Gregory dismissed with prejudice the allegations contained in ¶¶ 36-39 of the amended complaint because they were outside the statute of limitations period, *Mem. and Op.* at 2, the allegations contained in ¶¶ 41-46 of the amended complaint, *id.* at 3, all claims against the Financial Oversight and Management Board for Puerto Rico, *id.* at 4, all § 504 claims, *id.* at 5, and all claims for punitive damages.  *Id.*  The Court denied "Defendants' requests to dismiss all compensatory damages claims."  *Id.*

The parties engaged in extensive discovery, *see* ECF Nos. 104-65, and attempted mediation, *see* ECF Nos. 166-86, 188-204.  On March 20, 2023, the Senate of Puerto Rico and its President, Senator Jose Luis Dalmau (Appearing Defendants), moved for summary judgment and submitted a statement of material facts in support of the motion.  *Mot. for Summ. J.* (ECF No. 206) (*Defs.' Mot.*); *Suppl. Mot. with Statements of Uncontested Material Facts* (ECF No. 207) (DSMF).  On April 3, 2023, Plaintiffs opposed the motion for summary judgment.  *Resp. to Mot.* (ECF No. 218) (*Pls.' Opp'n*).  The Appearing Defendants did not reply.

On August 4, 2023, United States Magistrate Judge Giselle Lopez-Soler recused herself, and the Clerk of Court randomly assigned the case to this Judge.  *See Order of Recusal* (ECF No. 231); *Order Reassigning Case* (ECF No. 232); *Mem. of the Clerk* (ECF No. 233).  On August 16, 2023, the Court stayed the case pending its disposition of the dispositive motions.  *See Notice of Inj. Pursuant to Confirmation Order Issued by the Title III Ct.* (ECF No. 187); *Mot. to Stay* (ECF No. 227); *Order* (ECF No. 237); *Order* (ECF No. 238).

3

## II.    STATEMENT OF FACTS

### A.    The Statement of Material Facts and Puerto Rico Local Rule 56

Summary judgment practice under Federal Rule of Civil Procedure 56 is enhanced by the District of Puerto Rico's adoption of Local Rule 56, which sets forth the procedure the parties are to follow in pursuing and defending a Rule 56 motion. D.P.R. LOC. R. 56.

Local Rule 56(b) outlines the requirement for the moving party.  The Local Rule provides that the moving party shall submit a statement of material facts "set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried."  D.P.R. LOC. R. 56(b).  "Each fact in the statement shall be supported by a record citation as required by subsection (e) of this rule."  *Id.*

The next subsection outlines what is required of the opposing party.  Under Local Rule 56(c), "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of facts."  D.P.R. LOC. R. 56(c).  "The opposing statement shall admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."  *Id.*  "The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule."  *Id.*

Local Rule 56(e) explains the interplay between the subsections of the rule. Local Rule 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D.P.R. LOC. R. 56(e).

In this case, Appearing Defendants filed a motion for summary judgment and a supporting statement of material facts. *Defs.' Mot.*; DSMF ¶¶ 1-22.  The Plaintiffs filed only a response to the motion and filed neither an opposition to the Appearing Defendants' statement of material facts nor a separate statement of additional material facts. *Pls.' Opp'n.*  Instead, the Plaintiffs conceded in their opposition that "Co-defendant President of Senate of Puerto Rico's Statement of material facts is admitted." *Id.* at 1 n.1; *see* D.P.R. LOC. R. 56(c).  In setting forth the facts, therefore, the Court has accepted the Appearing Defendants' statement of material facts and only reviewed those facts to make certain they are supported by the record as required by Local Rule 56(e).  *See* D.P.R. LOC. R. 56(e).

## B.    Statement of Facts

Plaintiff Anixa Santiago communicates mainly in sign language and reading lips and can also communicate by reading and writing.  DSMF ¶¶ 1-2.  Ms. Santiago has been to the Puerto Rico Capitol Building one time as part of "deaf success recognition" but not to receive a specific service at any given time.  *Id.* ¶¶ 3-4.  She has not done any research or spoken with somebody who knows about the rights the deaf community has under the laws of Puerto Rico.  *Id.* ¶ 5.

Plaintiff Manuel García Castro has been to the Puerto Rico Capitol Building before but not to use a specific service provided by the Senate of Puerto Rico. *Id.* ¶ 6. Mr. García recognizes that the Senate of Puerto Rico previously used the Purple Communication Company to provide services for the deaf community and now uses sign language interpreters. *Id.* ¶ 7. He admits that the official page that grants access to the Senate of Puerto Rico's video archive on YouTube,[2] *id.* ¶¶ 8, 21, has a default YouTube function for closed captioning. *Id.* ¶¶ 9, 22.

As a result of Law 22, enacted on August 5, 2021, the Government of Puerto Rico created the Liaison Office for the Non-Hearing Community, which for the 2022-2023 fiscal year has a budget of $300,000, to comply with the first phase of its structuring. *Id.* ¶¶ 10, 13. Before the Liaison Office was established, the non-hearing community was serviced by the Office of the Advocate for People with Disabilities, which had a service contract with a company to assure that services were provided whenever needed within the executive branch. *Id.* ¶¶ 11-12.

Gabriel Esterrich Lamboy is the Compliance Coordinator for the Office of Compliance and Services to Persons with Disabilities of the Senate of Puerto Rico. *Id.* ¶ 14. The functions of the Compliance Coordinator include: serving as the Bill of Rights Liaison to the Advocate for Persons with Disabilities in compliance with Act 238 of 2004; performing tasks related to improving the accessibility of the Senate's physical facilities; offering workshops to employees on topics related to the disabled population, including Puerto Rico Law 238-2004, better known as the Charter of

---

[2]    Senado Estado Libre Asociado de Puerto Rico (@SenadoDigital), YOUTUBE (Mar. 29, 2024), https://www.youtube.com/channel/UC4B_LPWngCxJS9bUzFVf0gA

Rights of Persons with Disabilities; and performing other legislative compliance tasks for the population with disabilities. *Id.* ¶ 15.

The Senate of Puerto Rico presently employs two full-time sign language interpreters. *Id.* ¶ 16. The functions of a sign language interpreter include: translating and transmitting the message of the deponents, speakers, and members of the Senate, and ensuring that the original meaning and discourse is retained; conducting prior research to become familiar with the topic and the vocabulary to be used; taking notes so as not to omit any details during interpretation; working in tandem with another interpreter and taking turns to rest; working and processing documents related to the services or functions performed; collaborating in the functions of the [Secretary of the Senate] office; providing and distributing any necessary equipment or material related to their position; and training other interpreters. *Id.* ¶ 17.

The Senate of Puerto Rico placed several posters and informational materials on the Bill of Rights and the Protection and Advocacy Programs for persons with disabilities on public boards in the Senate facilities. *Id.* ¶ 18. The Senate of Puerto Rico has carried out various initiatives in favor of the population with disabilities, both at the administrative and legislative levels, including sign language interpretation services for the deaf population visiting the facilities, and participating in Public Hearings and coordinating weekly with the Office of Tourism of the Office of Legislative Services for tours of the Capitol in sign language. *Id.* ¶ 19. The Office of Compliance and Services to Persons with Disabilities offers weekly workshops

and/or presentations for Senate employees on Law 238 of 2004, the Bill of Rights of Persons with Disabilities, First Contact Phrases in Sign Language, and what to do when a person with disabilities arrives. *Id.* ¶ 20.

## III.    THE PARTIES' POSITIONS

### A.    Appearing Defendants' Motion for Summary Judgment

#### 1.    Plaintiffs' Claims Lack Evidentiary Support

Appearing Defendants argue that "Plaintiffs' First and Second Causes of Action, which assert claims pursuant to Title II of the ADA [], should be dismissed because the [amended complaint] fails to allege facts sufficient to state a claim." *Defs.' Mot.* at 2.  This is so, they argue, because Plaintiffs admit "they have neither attempted to visit the Senate of Puerto Rico's offices nor called its main office line, and provide no basis for . . . the Senate of Puerto Rico's alleged lack of services."  *Id.* (citing *Am. Compl.* ¶¶ 20-40).  Appearing Defendants contend that "Plaintiffs allege solely that they are 'deterred' from visiting the Senate of Puerto Rico offices because of their belief no interpretation services would be offered [yet t]hey provide no factual basis to support the alleged deterrence or alleged underlying belief."  *Id.* at 11. Appearing Defendants add that "[u]nsupported speculation of this kind fails to state a claim for relief pursuant to Title II of the ADA and cannot survive a motion to dismiss."[3]  *Id.*  Similarly, Appearing Defendants say that Plaintiffs' allegations that

---

[3]      As discussed further, the Appearing Defendants submitted a motion for summary judgment to the Court.  Despite this, at times they refer to a motion to dismiss and argue a motion to dismiss standard.  *See Defs.' Mot.* at 2 ("Specifically, Plaintiffs' First and Second Causes of Action, which assert claims pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act, respectively should be dismissed because the [First Amended Complaint] fails to allege facts sufficient to state a claim under either statute").  In this part of their motion for summary judgment, the Appearing Defendants

the Senate of Puerto Rico lacks effective methods of making aurally delivered information available via ASL also fail because "Plaintiffs do not allege they tried to communicate with the Senate of Puerto Rico telephonically, but were denied access, or provide the basis for their belief that such efforts would be futile." *Id.* at 12.

Pursuant to Federal Rule of Evidence 201(b), Appearing Defendants ask the Court to take notice "of the fact that [the Telecommunications Relay Service] is available in all 50 states, the District of Columbia, Puerto Rico and the other U.S. territories," *id.*, and "is a free, publicly available resource." *Id.* at 13.

Insofar as Plaintiffs "assert they were excluded because the Senate of Puerto Rico failed to provide them with access to their preferred forms of service," Appearing Defendants say "that allegation also fails to state a claim" because "the ADA only mandates an agency provide meaningful access via effective modes of communication," not "the precise mode of communication Plaintiffs may request." *Id.* at 14.

Appearing Defendants add that Plaintiffs' allegation that "the Senate of Puerto Rico has violated P.R. Law 136 . . . is similarly flawed," *id.* at 3 (citing *Am. Compl.* ¶ 90), because as "Plaintiffs themselves admit, they have not even visited the Senate of Puerto Rico's facilities, much less been denied an interpreter, and provide no factual basis to support their assertions." *Id.* (citing *Am. Compl.* ¶¶ 20-40). Moreover, "Plaintiffs only allege the Senate of Puerto Rico failed to take 'appropriate steps' to

---

are arguing a Rule 12(b)(6) standard for dismissal of the allegations in the First Amended Complaint, not a Rule 56 standard based on the summary judgment record.

ensure effective communication, without any indication of the basis for their allegation." *Id.* at 17 (citing *Am. Compl.* ¶ 56).

### 2. Plaintiffs Cannot Be Granted Damages Without Discriminatory Animus

Appearing Defendants also contend that to receive damages under Title II, "Plaintiffs need to provide proof as to intentional discrimination." *Id.* (citing *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir. 2003)). "The Amended Complaint, however, does not plausibly state that the plaintiffs were subjected to intentional discriminatory animus and that they suffered economic harm as a result. All that the Amended Complaint contains are conclusory assertions." *Id.* at 17-18 (citing *Am. Compl.* ¶¶ 5, 93-95, 103). Appearing Defendants "submit to this Honorable Court that the Senate of Puerto Rico is entitled to judgment as a matter of law." *Id.* at 4.

### B. Anixa Santiago-Rivera and Manuel García-Castro's Opposition

### 1. Mootness

Plaintiffs insist that Appearing Defendants' "claims about the recent measures taken to comply with the ADA do not automatically render the controversy moot." *Pls.' Opp'n* at 2 (emphasis omitted). To establish mootness, Plaintiffs say, "[t]he defendant must demonstrate that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* They add that "the mere existence of compliance policies does not necessarily moot an ADA claim, as the defendant could change or rescind these policies at any time." *Id.* Plaintiffs also remark that "[t]he voluntary cessation exception does not apply when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur

after the termination of the suit," *id.* (citing *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 (1st Cir. 2022)), and that the "Senate of Puerto Rico's history of non-compliance weighs against mootness." *Id.* at 3.

Moreover, Plaintiffs argue, "even assuming that all past wrongs were cured, [they] may obtain relief in the form of compensatory or nominal damages under Title II of the ADA." *Id.* (citing *G. v. Fay Sch.*, 931 F.3d 1 (1st Cir. 2019)). They add that "[a]s a general matter, 'a live claim for nominal damages will prevent a dismissal for mootness.'" *Id.* at 4 (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002); and citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801-02 (2021)).

### 2.    The Title II Claim is Plausible

Next, Plaintiffs say "[t]he core dispute revolves around access to videos of legislative proceedings in the Puerto Rico Senate . . .. The defendant does not address the lack of closed captions for live streaming or the quality and effectiveness of the YouTube-generated captions, which means the controversy is not moot." *Id.* at 5 (emphasis omitted). Additionally, Plaintiffs maintain that "defendants seem to neglect the requirement that a Title II entity must give 'primary consideration' to the type of aid requested by a person with a communication disability." *Id.*

### 3.    Another Rule 12(b)(6) Motion to Dismiss Is Inappropriate

Plaintiffs take issue with the form of Appearing Defendants' motion, saying that "[t]he current challenge is a facial Rule 12(b)(6) challenge to the complaint, not a Rule 56 challenge. The defendant's arguments should be considered only in the context of a motion to dismiss for failure to state a claim, rather than a summary

judgment motion." *Id.* Moreover, Plaintiffs insist that "[t]he sufficiency of the complaint has already been scrutinized by the district court, making a rule 12(b)(6) attack inappropriate at this stage," and that they "have adequately alleged a cause of action under Title II of the ADA . . . claiming that the defendants violated these laws by not providing closed captions for live videos of legislative sessions." *Id.* (emphasis omitted).

### 4. Animus Is Not a Necessary Showing to Recover Damages

The Plaintiffs dispute the Appearing Defendants' contention that they must prove discriminatory animus to recover compensatory damages under Title II. *Id.* at 6. Plaintiffs aver "defendant's claims are based on misreading of case law and that the deliberate indifference standard, rather than discriminatory animus, is the appropriate standard for establishing intent under Title II. No Circuit Court requires disability-based animus for compensatory damages." *Id.* Plaintiffs say that "[e]ven though there was no suggestion of animus or hostility—the plaintiffs had only pled 'irrational, arbitrary and unreasonable' conduct—the [*Nieves-Márquez*] court concluded that the claim for damages was not precluded." *Id.* (quoting *Nieves-Márquez*, 353 F.3d at 126 n.21, 127). Plaintiffs represent that "[c]ourts within the First Circuit continue to allow claims for economic damages to move forward without a showing of animus." *Id.* (citing *Kelley v. Mayhew*, 973 F. Supp. 2d 31, 39-40 (D. Me. 2013)).

To bolster their point, Plaintiffs distinguish *Carmona-Rivera*, a case relied upon by Appearing Defendants, by saying that even that case "recognized that

plaintiffs could recover non-economic damages without a showing of animus—so long as they established economic harm." *Id.* at 7 (citing *Carmona-Rivera*, 464 F.3d at 17). They aver that the "absence of animus precluded recovery of non-economic damages in that case only because the plaintiff was not seeking economic damages." *Id.* But here, Plaintiffs are seeking economic damages because barriers to communication have resulted in social isolation and mental health issues that "may lead to additional economic burdens such as therapy or medication costs. Moreover, plaintiff may obtain relief in the form of compensatory o[r] nominal damages under Title II." *Id.*

## IV. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a

factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V.   DISCUSSION

### A.   Framing

First, the Court notes that there are no live claims remaining under Section 504 of the Rehabilitation Act.  In a previous order, Judge García-Gregory held that "[n]owhere in the Amended Complaint do Plaintiffs allege that they sought services from a federally funded entity or program.  This proves fatal to their § 504 claims, and therefore, these claims must be DISMISSED WITH PREJUDICE." *Mem. and Op.* at 5; *see also id.* at 6.

Second, although the Appearing Defendants are moving for summary judgment and cite Federal Rule of Civil Procedure 56, they periodically confuse the

issue by referring to allegations in the First Amended Complaint and by citing legal standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), even though they already submitted a previous motion to dismiss in this case, and an order was issued on that motion. *Defs.' Mot.* at 10-11 ("First, Plaintiffs allege the Senate of Puerto Rico has 'deterred' them from participation in its services because it allegedly has not provided formal training or protocols to its employees. [*First Am. Compl.*] ¶ 50. But the [First Amended Complaint] provides no factual support for this allegation"); *Mem. and Opinion* (ECF No. 97) (disposing of motions to dismiss).

The Appearing Defendants' arguments are problematic for two reasons. First, although properly before a court in a motion to dismiss, a complaint is not before a court in a motion for summary judgment. First Circuit law is clear: a party may not rely on an unverified complaint to support a statement of material fact. *Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir. 1993) ("We have made it crystal clear that, in opposing summary judgment, a litigant 'may not rest upon mere allegations in, say, an unverified complaint'" (quoting *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991))). Here, the First Amended Complaint is not a verified complaint, and the parties have not sought to make its allegations part of the summary judgment record. Although the First Amended Complaint may provide guidance as to what theories the Plaintiffs are pursuing, it is neither here nor there in a motion for summary judgment whether the complaint "provides. . . factual support for . . . allegation[s]." *Defs.'s Mot.* at 11.

Moreover, in support of their motion for summary judgment, the Appearing Defendants cite caselaw addressing the standards applicable to a motion to dismiss. *Id.* at 11-12.  On occasion, the parties to a motion to dismiss will refer to matters outside the pleading, and under Federal Rule of Civil Procedure 12(d) a court will convert the motion to a motion for summary judgment and give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *see, e.g., ILA PRSSA Pension Fund v. ILA Loc. 1740, ALF-CIO*, 419 F. Supp. 3d 314, 320 (D.P.R. 2019).  But no similar provision exists for converting a motion for summary judgment to a motion to dismiss because the standard for a motion for summary judgment is more stringent and because the motion for summary judgment invariably contains matters outside the pleadings.  *Collier v. City of Chicopee*, 158 F.3d 601, 603 (1st Cir. 1998) ("[T]he summary judgment standard is considerably more stringent [than the motion to dismiss standard]").

The Appearing Defendants' references to the First Amended Complaint and their citation of motion to dismiss authority caused the Plaintiffs to object to the Appearing Defendants' Rule 12(b)(6) arguments.  *Pls.' Opp'n* at 4 ("The defendant presents two main Rule 12(b)(6) arguments against the plaintiffs' allegations").  The Plaintiffs contend that the "current challenge is a facial, Rule 12(b)(6) challenge to the complaint, not a Rule 56 challenge" and that "defendants' arguments should be considered only in the context of a motion to dismiss for failure to state a claim, rather than a summary judgment motion."  *Id.* at 4.

It is unusual and unproductive for a movant in a motion for summary judgment to argue the more relaxed legal standards applicable to a motion to dismiss. Nevertheless, to cut the Gordian knot, the Court treats the pending motion for summary judgment as a motion for summary judgment, not a motion to dismiss, and applies summary judgment standards to the motion.  In evaluating the motion, the Court has accepted the uncontested statements of material fact and applies First Circuit law to determine whether "there is no genuine dispute as to any material fact" and whether the Appearing Defendants are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Finally, the Court does not fully understand why Plaintiffs argue their claim is not moot.  *See Pls.' Opp'n* at 2-5, 7.  In their motion for summary judgment, the Appearing Defendants do not argue that Plaintiffs have lost standing due to a shift in facts over time.  *See Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 146 (D. Mass. 2021) (describing mootness as the doctrine of standing set in a time frame).  As the parties agree the case is not moot, the Court does not address it further.

### B.    Analytic Approach

The Court proceeds through a typical analysis to decide whether summary judgment is warranted.  First, the Court looks to see if the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  If Appearing Defendants, the moving parties, have made that preliminary showing, the Court will evaluate

17

whether Plaintiffs, the nonmoving party, produced "specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy*, 252 F. App'x at 332. Summary judgment is proper if the nonmoving party has not provided "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll*, 294 F.3d at 237; *see Celotex*, 477 U.S. at 322.

### C. Application

#### 1. Title II Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014) (quoting 42 U.S.C. § 12132). In reading Title II, the First Circuit has said that to state an actionable ADA claim, a plaintiff must establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Univ. de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000); *accord Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006).

In *Sosa v. Massachusetts Department of Corrections*, 80 F.4th 15 (1st Cir. 2023), the First Circuit reiterated there are three broad types of Title II claims: intentional discrimination, disparate impact, and failure to provide a reasonable

accommodation. *See id.* at 31; *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144-45 (1st Cir. 2014).

"First, a plaintiff can assert disparate treatment on account of disability, i.e., that the disability actually motivated the defendant's challenged adverse conduct." *Nunes*, 766 at 144 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003)). Second, "in an appropriate case a plaintiff can claim that a government policy, though neutral on its face, 'fall[s] more harshly on one group than another and cannot be justified by business necessity,'" commonly known as a disparate impact claim. *Id.* at 145 (citing *Raytheon*, 540 U.S. at 52). "Finally, a plaintiff can pursue a third path, claiming that a public entity has refused to affirmatively accommodate his or her disability where such accommodation was needed to provide 'meaningful access to a public service,'" commonly known as a reasonable accommodation claim. *Id.* (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273-76 (2d Cir. 2003)). Plaintiffs do not specify what type(s) of Title II claim(s) they are bringing, and the amended complaint suggests they could be bringing a Title II claim under all three theories of liability.

There is no dispute that Plaintiffs are qualified, disabled individuals. Appearing Defendants argue, however, that Plaintiffs are unable to prove the other prongs because they have not visited or called the Senate of Puerto Rico's offices. Appearing Defendants, however, fail to point to any caselaw that suggests the exclusion or denial of services must occur in person or on the phone, and the Court is aware of none.

Plaintiffs aver the "core dispute revolves around access to videos of legislative proceedings in the Puerto Rico Senate." *Pls.' Opp'n* at 5 (emphasis omitted). Plaintiffs point out that Appearing Defendants do "not address the lack of closed captions for live streaming or the quality and effectiveness of the YouTube-generated captions." *Id.*

In support of their position, however, Plaintiffs offer no facts. Nor do they contest any of the facts put forth by Appearing Defendants. A review of the facts before the Court shows the record is devoid of any competent evidence to enable a factfinder to decide in Plaintiffs' favor because there are no facts to support their theory that they were denied access by the Puerto Rico Senate due to a lack of captions or lack of adequate captions.

As Plaintiffs themselves say, this theory is the core of the dispute, yet Plaintiffs have neither provided evidence to support it nor pointed to evidence in the record to support it. The Court concludes the record does not reveal any genuine issue of material fact on the existence of an element essential to Plaintiffs' case—denial or exclusion. Therefore, Rule 56 mandates entry of summary judgment. *Celotex*, 477 U.S. at 322.

### a.    Reasonable Accommodation

A successful "Title II claim premised on a failure to provide a reasonable accommodation . . . alleges that (1) due to the claimant's disability, he needs an individualized change to a public entity's facially neutral policies, practices, or procedures if he is to effectively access some opportunity; but (2) the public entity

unjustifiably failed to make that change." *Sosa*, 80 F.4th at 31 (citing *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021)).

Insofar as Plaintiffs have brought a reasonable accommodation claim under Title II, the record contains no evidence that Plaintiffs told Appearing Defendants of their disability, requested an accommodation, or that an accommodation was unreasonably denied. *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless triggered by a request"). Therefore, while the Court notes Plaintiffs' point that Title II entities must give primary consideration to the kind of aid requested by a person with a communication disability, *see Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 64 (2d Cir. 2021), Plaintiffs point to no evidence in the record that they requested a specific kind of aid. As such, as far as Plaintiffs are attempting to make a reasonable accommodation Title II claim against the Senate of Puerto Rico, summary judgment is appropriate because they have failed to establish an issue of fact on the third prong of a reasonable accommodation claim: "the defendant, despite knowing of her disability, did not reasonably accommodate it." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 31 (1st Cir. 2019).

### b.    Disparate Impact

Insofar as Plaintiffs attempt to bring a disparate impact claim, to prevail they would need to "'1) identify the challenged employment practice or policy, and pinpoint the defendant's use of it'; (2) 'demonstrate a disparate impact on a group characteristic . . . that falls within the protective ambit of [the ADA]'; and (3)

21

'demonstrate a causal relationship between the identified practice and the disparate impact.'" *Angelika P. v. Town of Meredith*, No. 19-cv-1114-SM, 2022 U.S. Dist. LEXIS 42031, at *25 (D.N.H. Mar. 9, 2022) (quoting *Femino v. NFA Corp.*, 274 F. App'x 8, 10 (1st Cir. 2008)).

Once again, Plaintiffs have not pointed to any facts in the record that "demonstrate a disparate impact on a group characteristic" or "a causal relationship between the identified practice and the disparate impact." Allegations in the Amended Complaint and legal arguments in opposition to summary judgment couched as facts do not suffice as the Court disregards conclusory allegations. *Ward v. Alphacore Pharma, LLC*, 89 F.4th 203, 210 (1st Cir. 2023) (explaining that "mere allegations in say, an unverified complaint or lawyer's brief" are insufficient to fend off summary judgment (quoting *Kelly*, 924 F.2d at 357)); *Mancini*, 909 F.3d at 38. Instead, Plaintiffs needed "competent evidence to enable a factfinder to decide in [their] favor on the disputed claim[]." *Carroll*, 294 F.3d at 237. The Court concludes Plaintiffs have not made a showing sufficient to establish the existence of a genuine issue of material fact as to elements essential to their case, which they would bear the burden of proving at trial. Therefore, Rule 56 mandates entry of summary judgment. *Celotex*, 477 U.S. at 322.

### 2.    Title II Damages

To start, punitive damages "are clearly not available on . . . [a] Title II claim," and, as such, Plaintiff is barred from seeking them. *Nieves–Márquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir.2003) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

Private individuals may claim compensatory damages under Title II, but only for intentional discrimination. *See id.* Finally, "the First Circuit has acknowledged, without expressly holding, that damages for emotional injury could be available in situations where economic harm is not present if there exists a sign of *actual animus* towards the disabled." *Vazquez v. Municipality of Juncos,* 756 F.Supp.2d 154, 167 (D.P.R.2010) (emphasis supplied) (citing *Schultz v. Young Men's Christian Ass'n of U.S.,* 139 F.3d 286, 290–91 (1st Cir.1998)).

Plaintiffs take issue with Appearing Defendants' position that to be granted compensatory damages under Title II of the ADA, Plaintiffs are required to show intentional discriminatory animus. *See Pls.' Opp'n* at 6-7; *Defs.' Mot.* at 17-18. It is unclear why. The First Circuit wrote in *Nieves-Márquez* that "[t]o state a claim for compensatory damages, the plaintiff must clear two hurdles," the first being that "private individuals may recover compensatory damages under § 504 and Title II only for intentional discrimination." 353 F.3d at 126 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001)).

In a footnote in *Nieves-Márquez*, the First Circuit states that this is the case because Title II of the ADA borrows its remedies from Title VI of the Civil Rights Act of 1964 and cites *Sandoval*, a case where the Supreme Court held that compensatory damages are available under Title VI only for intentional discrimination. *Id.* at 126 n.20 (citing *Alexander*, 532 U.S. at 280-81). The reasoning follows that if Title VI only allows compensatory damages for intentional discrimination, it must be true for Title II of the ADA. *See Torres v. Junto De Gobierno De Servicio De Emergencia*, 91

23

F. Supp. 3d 243, 254 (D.P.R. 2015) ("[P]rivate individuals may recover compensatory damages under § 504 and Title II only for intentional discrimination").

Plaintiffs resist that conclusion; they point to footnote 21 in *Nieves-Márquez* for the proposition that while there was no suggestion of animus or hostility in that case, the First Circuit nonetheless concluded that the claim for damages was not precluded. *Pls.' Opp'n* at 6. They also point to *Kelley v. Mayhew*, 973 F. Supp. 2d 31, 39-40 (D. Me. 2013), for the proposition that "[c]ourts within the First Circuit continue to allow claims for economic damages to move forward without a showing of animus." *Id.*

Plaintiffs are only partially correct. True, in both of those cases courts allowed claims for compensatory damages that did not irrefutably prove discriminatory animus to move forward. But the District of Maine case was at the motion to dismiss stage and the district court drew the reasonable inference based on the allegations in the complaint that the defendant "intentionally discriminated against the Plaintiff and that she suffered economic harm." *Kelley*, 973 F. Supp. 2d at 40. Similarly, *Nieves-Márquez* was an interlocutory appeal to the granting of a preliminary injunction and denial of a motion to dismiss. 353 F.3d at 112.

At the motion to dismiss stage, concrete evidence of animus is not necessary. Instead, as the First Circuit pointed out in *Nieves-Márquez*, "the plaintiffs clear this hurdle because the complaint, with all reasonable inferences drawn in its favor, alleges intentional discrimination. The defendants deny that there was any wrongful intent, but at this stage, we must credit the pleadings." 353 F.3d at 126. Plaintiffs

in the case at bar were also allowed to move forward on the animus allegations in their pleadings at the motion to dismiss stage.  But we are there no longer.  The standard required at the summary judgment stage is more stringent, and bare assertions and conclusory allegations do not suffice.  *Mancini*, 909 F.3d at 38.

Moreover, as the Court has already granted summary judgment to the Appearing Defendants as to any Title II allegations made against them, Plaintiffs cannot recover their requested relief—regardless of its form—as there is no outstanding claim for which to grant relief on.

### 3.    Puerto Rico Law 136-1996 Claim

Finally, Appearing Defendants request summary judgment be granted for them on Plaintiffs' Puerto Rico Law 136 claim.  *Defs.' Mot.* at 16-17.  In their opposition, Plaintiffs do not respond.  *See Pls.' Opp'n* at 1-8.

Puerto Rico Law 136 requires interpreters for the hearing disabled. Specifically, the provision provides in relevant part that "[a]ll government agencies shall provide an interpreter to assist persons with hearing disabilities that impede oral communication, who visit the agency."  8 L.P.R.A. § 811.

As Appearing Defendants point out, Plaintiffs do not so much as allege that any hearing-impaired visitor was refused access to a sign language interpreter by the Senate of Puerto Rico.  Nor do they allege that they have visited the offices of the Senate of Puerto Rico.  Nor do they offer any evidence to support the conclusion that they visited the offices of the Senate of Puerto Rico and were denied.

In short, there is no genuine issue of material fact and there is not enough competent evidence to enable a factfinder to decide in Plaintiffs' favor in a claim against the Senate of Puerto Rico under Puerto Rico Law 136. *See Carroll*, 294 F.3d at 237. Therefore, summary judgment on this claim is appropriate.

## VI. CONCLUSION

The Court GRANTS Jose Luis Dalmau-Santiago's Motion for Summary Judgment (ECF No. 206).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2024