UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MANUEL GARCÍA CASTRO, et al.,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No. 3:20-cv-01065-JAW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
COMMONWEALTH OF PUERTO RICO,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀et al.,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀)

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, the commonwealth of Puerto Rico, its Governor, and the Chief Justice of the Puerto Rico Supreme Court move for summary judgment. The plaintiffs, who are deaf, allege the governmental entities discriminated against them due to their disability and thereby violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq., and 28 CFR § 35.162. The Court grants summary judgment on the claims against three agencies because they are time barred. The Court further grants summary judgment as to the remaining government entities on plaintiffs' Title II intentional discrimination claims because they are entitled to judgment as a matter of law based on the uncontested facts before the court. The Court, though, denies the motion as to Plaintiffs' Title II reasonable accommodation claim against the Puerto Rico Court of Appeals because genuine issues of material fact remain unresolved. Finally, the Court does not reach whether the commonwealth of Puerto Rico violated 28 CFR § 35.162 as the issue was not properly presented.

# I.    PROCEDURAL HISTORY

On February 5, 2020, Manuel García-Castro and Anixa Santiago-Rivera (Plaintiffs) filed a complaint against the commonwealth of Puerto Rico; Carlos J. Mendez-Nunez, acting in his official capacity as Speaker of the House of Representatives of Puerto Rico;  Maite Oronoz-Rodriguez, acting in her official capacity as the Chief Justice of the Puerto Rico Supreme Court; Thomas Rivera-Schatz, acting in his official capacity as the President of the Senate of Puerto Rico; Wanda Vazquez-Garced, acting in her official capacity as the Governor of Puerto Rico; and the Financial Oversight and Management Board for Puerto Rico.[1] *Compl.* (ECF No. 1).   The Plaintiffs sought declaratory and injunctive relief and other relief including compensatory damages to remedy alleged unlawful discrimination in violation of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and Puerto Rico Laws 136-1996 and 266-2018. *Id.* at 1, 21-24.

In the following months, Defendants individually filed several motions to dismiss and motions to join each other's motions to dismiss. *See Mots. to Dismiss* (ECF Nos. 38, 40, 42, 43); *Mots. to Join* (ECF Nos. 44-47).   On November 2, 2020, the Plaintiffs amended their complaint. *Am. Compl.* (ECF No. 52).   Thereafter, the Defendants filed motions to dismiss the Amended Complaint and to join each other's motions to dismiss. *See Mots. to Dismiss* (ECF Nos. 53, 60, 68); *Mots. to Join* (ECF

---

[1]    On March 15, 2021, the Court, pursuant to Federal Rule of Civil Procedure 25(d), substituted Rafael Hernández Montañez, in his official capacity as Speaker of the Puerto Rico House of Representatives for Carlos Méndez Núñez. *Order* (ECF No. 92).   On August 16, 2023, the Court, pursuant to Federal Rule of Civil Procedure 25(d), substituted Jose Luis Dalmau Santiago, in his official capacity as President of the Puerto Rico Senate, for Thomas Rivera Schatz, and Pedro Rafael Pierluisi Urrutia, in his official capacity as Governor of Puerto Rico, for Wanda Vazquez Garced. *Order* (ECF No. 241).

Nos. 70, 71, 78). Plaintiffs opposed the motions to dismiss. *See Resps. in Opp'n* (ECF Nos. 72, 74, 79). With the filing of the Amended Complaint and updated motions to dismiss, Judge Jay A. García-Gregory, the presiding judge at the time, deemed the first set of motions moot on January 28, 2021. *Order* (ECF No. 87).

On September 23, 2021, Judge García-Gregory issued an opinion that granted in part and denied in part Defendants' motions to dismiss, and dismissed several claims in the Amended Complaint, including all claims against the Financial Oversight and Management Board for Puerto Rico. *Mem. and Op.* (ECF No. 97); *Partial J.* (ECF No. 98).

The parties thereafter engaged in extensive discovery practice, *see* ECF Nos. 104-65, and attempted mediation, *see* ECF Nos. 166-86, 188-204. Then on March 23, 2023, the commonwealth of Puerto Rico, Chief Justice Oronoz-Rodriguez, and Governor Pedro R. Pierluisi Urrutia (Appearing Defendants) moved for summary judgment and submitted a statement of material facts in support of the motion. *Mot. for Summ. J.* (ECF No. 214) (*Defs.' Mot.*); *Mot. Submitting Statements of Uncontested Material Facts in Supp. of Mot. for Summ. J.* (ECF No. 213) (DSMF). On April 3, 2023, Plaintiffs contested the defendants' material facts, yet did not submit their own statement of additional material facts.[2] *Resp. to Mot. in Opposing Statement of Uncontested Material Facts* (ECF No. 217) (PRDSMF). The following day, April 4,

---

[2] As the facts contained in Appearing Defendants' supporting statement of facts are "supported by record citations," they are "deemed admitted unless properly controverted." P.R. LOC. CIV. R. 56(e). Because Plaintiffs have not controverted them since they did not, as required by Puerto Rico Local Rule 56(c), submit "a separate, short, and concise statement of material facts," the Court admits the facts submitted by Appearing Defendants, save for modifications as required based on Plaintiff's qualifications and objections.

2023, Plaintiffs opposed the motion for summary judgment. *Resp. to Mot. for Summ. J.* (ECF No. 219) (*Pls.' Opp'n*). On April 21, 2023, the Appearing Defendants replied. *Reply* (ECF No. 225) (*Defs.' Reply*).

On August 4, 2023, United States Magistrate Judge Giselle Lopez-Soler recused herself, and the Clerk of Court randomly assigned the case to this Judge. *See Order of Recusal* (ECF No. 231); *Order Reassigning Case* (ECF No. 232); *Mem. of the Clerk* (ECF No. 233). On August 16, 2023, the Court stayed the case pending resolution of the dispositive motions. *See Notice of Inj. Pursuant to Confirmation Order Issued by the Title III Ct.* (ECF No. 187); *Mot. to Stay* (ECF No. 227); *Order* (ECF No. 237); *Order* (ECF No. 238).

## II.    STATEMENT OF FACTS

### A.    The Statement of Material Facts and Puerto Rico Local Rule 56

Summary judgment practice under Federal Rule of Civil Procedure 56 is enhanced by the District of Puerto Rico's adoption of Local Rule 56, which sets forth the procedure the parties are to follow in pursuing and defending a Rule 56 motion. D.P.R. Loc. R. 56.

Local Rule 56(b) outlines the requirement for the moving party. The Local Rule provides that the moving party shall submit a statement of material facts "set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R. Loc. R. 56(b). "Each fact in the statement shall be supported by a record citation as required by subsection (e) of this rule." *Id.*

The next subsection outlines what is required of the opposing party.  Under Local Rule 56(c), "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of facts."  D.P.R. LOC. R. 56(c).  "The opposing statement shall admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."  *Id.*  "The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule."  *Id.*

Local Rule 56(e) explains the interplay between the subsections of the rule. Local Rule 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  D.P.R. LOC. R. 56(e).

In this case, Appearing Defendants filed a motion for summary judgment and a supporting statement of material facts.  *Defs.' Mot.*; DSMF ¶¶ 1-70.  The Plaintiffs filed a response to the motion, *Pls.' Opp'n*, and opposed the Appearing Defendants' statement of material facts.  PRDSMF ¶¶ 1-70.  But they did not file a separate statement of additional material facts.  *See* D.P.R. LOC. R. 56(c).  The Court has therefore set forth the facts based on its resolution of the Defendants' statements and the Plaintiffs' vigorous and multitudinous objections.  *See* D.P.R. LOC. R. 56(e).

### B.    Anixa Santiago Rivera and Manuel García Castro

Plaintiffs Anixa Santiago Rivera and Manuel García Castro are two "deaf individuals who communicate primarily in American Sign Language (ASL), which is their expressed, preferred, and most effective means of communication."[3] *Am. Compl.* at 2. Plaintiffs allege that they faced discrimination in their dealings with "several executive branch agencies, courts, and the capitol of the Commonwealth of Puerto Rico." *Id.* They further allege that the discrimination is "systemic, pervasive, and continuing policy, pattern, or practice." *Id.*

Anixa Santiago Rivera communicates mainly in ASL, her primary language, and then, as needed, she also reads lips.[4] DSMF ¶ 1; PRDSMF ¶ 1. Ms. Santiago can communicate by reading and writing, but her only effective method of communication is ASL.[5] DSMF ¶ 2; PRDSMF ¶ 2. Ms. Santiago has not done any

---

[3]    "Ordinarily, statements in a complaint are not part of the summary judgment record." *Doherty v. Donahoe*, 985 F.Supp.2d 190, 195 (D. Mass. 2013) (citing *Sheinkopf v. Stone*, 927 F.2d 1259, 1262-63 (1st Cir. 1991)). The Court only refers to the amended complaint to ensure that crucial background—such as who the Plaintiffs are—is provided. The Court does not otherwise rely on Plaintiffs' allegations in the amended complaint.

[4]    DSMF ¶ 1 states that "Plaintiff Anixa Santiago Rivera communicates mainly in sign language and reading lips." Plaintiffs deny DSMF ¶ 1, saying that:

> In Mrs. Anixa Santiago's deposition, she indicated that her only primary language is American Sign Language (ASL) and that she sometimes uses lip reading, but that is not perfect. In fact, she specified that ASL is her "main way of communicating." Although she can read and write, Plaintiff clarified that she does not do it in the same way as hearing persons and that she cannot understand "technical information." The only way Plaintiff Anixa Santiago can communicate adequately is through ASL.

PRDSMF ¶ 1 (citing DSMF, Attach. 1, *Dep. of Mrs. Anixa Santiago Rivera* at 16:12-21 (*Santiago Dep.*)). After reviewing Ms. Santiago's deposition, the Court treats the denial as a qualification, alters the fact to clarify that ASL is her primary language and reading lips is a supplement, and admits the fact.

[5]    DSMF ¶ 2 states that "Plaintiff Anixa Santiago Rivera can communicate by reading and writing." Plaintiffs deny this allegation and say that "[t]he only effective method of communication for the Plaintiff is ASL." PRDSMF ¶ 2 (citing *Santiago Dep.* 16:12-21). But in PRDSMF ¶ 1, Ms.

research into, nor has she spoken with somebody that knows, about the rights that she has as part of the deaf community under the laws of Puerto Rico.[6]  DSMF ¶ 10; PRDSMF ¶ 10.

### C.     Anixa Santiago Rivera's and Manuel García Castro's Encounters with the Government of the Commonwealth of Puerto Rico

#### 1.     Ms. Santiago and the Department of Transportation

Ms. Santiago has a valid driver's license, DSMF ¶ 3; PRDSMF ¶ 3, and acknowledges that the process to renew a driver's license in Puerto Rico has improved in some ways for her now that she understands it more, such as being able to make an appointment to renew a license.[7]  DSMF ¶ 4; PRDSMF ¶ 4.  When Ms. Santiago

---

Santiago says that she "can read and write" and qualifies her reading and writing ability by noting that she cannot understand "technical information."  PRDSMF ¶ 1.

    After reviewing Ms. Santiago's deposition, the Court treats the denial as a qualification and alters the fact to clarify that her only effective means of communication is ASL.

[6]    Plaintiffs deny DSMF ¶ 10, saying "The Co-defendant's question was too broad and that is why the Plaintiff's answer can be misinterpreted.  The Plaintiff clarified that she knows about the ADA, her rights as a person with a hearing disability, and about the right to equal access to public services."  PRDSMF ¶ 10.  The Court declines to accept Ms. Santiago's denial because DSMF ¶ 10 is fully supported by the record citation.  *See* DSMF ¶ 10 (citing *Santiago Dep.* 49:13-16).  If Ms. Santiago wished to add facts, she should have filed her own statement of additional material facts.

[7]    DSMF ¶ 4 states that "Plaintiff Anixa Santiago Rivera acknowledges that the process to renew a driver's license in Puerto Rico has improved in some ways because now a person can make an appointment to renew the license."  Plaintiffs qualify this statement and say that:

> Mrs. Anixa Santiago only states that, since she first applied for her driver's license at the age of seventeen, there have been some changes in the driver's license issuance process. Additionally, the Plaintiff explains that the process has become a bit easier, not because of accessibility in the Department of Transportation, but because she is no longer as young and has learned to deal with that type of discrimination.

PRDSMF ¶ 4 (citing *Santiago Dep.* 120:20, 22:16-22, 23:10-15).

    In her deposition, Ms. Santiago was asked whether the process inside the Department of Transportation had changed at her most recent renewal.  *Santiago Dep.* 23:4-6.  She responded it was a different process, and when asked what the differences were, she answered: "Okay.  Because in the past, my first time, it was very complicated and confusion.  I had to understand many things in that time and now it has improved on some ways. For example, now you make an appointment and you have to call to make an appointment. That's what changed, but I didn't knew (sic) at that time."  *Id.* at 23:7-15.  Just before being asked this line of questioning, Ms. Santiago was asked if there was "something that the Department of Transportation did that made [the process] more accessible," to which she responded "No."  *Id.* at 23:1-3.

visited the Department of Transportation (DOT), DOT employees offered to assist her even though there were no interpreters available.[8]  DSMF ¶ 5; PRDSMF ¶ 5.

### 2.    Ms. Santiago and the Department of State Trademark

In 2017, Ms. Santiago visited the Department of State Trademark division. DSMF ¶ 9; PRDSMF ¶ 9.

### 3.    Plaintiffs and the Department of Consumer Affairs

Also in 2017, both Plaintiffs visited the Department of Consumer Affairs in Bayamón, Puerto Rico, to file a complaint against an alarm security company.[9] DSMF ¶ 6; PRDSMF ¶ 6.  Plaintiffs were notified of the final resolution of their Complaint at the Department of Consumer Affairs in Bayamón on May 30, 2017. DSMF ¶ 7; PRDSMF ¶ 7.

### 4.    Plaintiffs and the Department of Education

In 2019, both Plaintiffs visited the Department of Education (DOE) about four times; the first time they were not given an interpreter, two other times they were

---

Given this context, the Court concludes that Ms. Santiago attributes the improvement in her experience of getting a license both to the Department making the process more accessible and to her knowledge increasing.  The Court modifies the fact to reflect this, and otherwise admits the fact as supported by the record citation.

[8]    DMSF ¶ 5 states that "Employees from the Department of Transportation offered to assist Plaintiff Anixa Santiago Rivera even though there were no interpreters available."  Plaintiffs qualify this statement and say that "[i]t is true that there is no interpreter service at the Department of Transportation, but the employees of this entity did not offer adequate help to Mrs. Anixa, as she required an interpreter, and it was not provided to her."  PRDSMF ¶ 5.

The Court determines this qualification, which centers on the quality of the help provided, is beyond the scope of the fact and admits the fact as alleged.

[9]    DSMF ¶ 6 states that "Plaintiffs visited the Department of Consumer Affairs in Bayamón, Puerto Rico in 2017, to file a complaint against an alarm security company."  Plaintiffs qualify the fact and say that "While the Plaintiffs admitted that they went to the Department of Consumer Affairs in Bayamón, Puerto Rico, they did not say that this was the only or last time they went to the place." PRDSMF ¶ 6.

The Court finds this qualification beyond the scope of the fact and admits the fact as alleged. DSMF ¶ 6 neither states nor implies that 2017 was the only time the Plaintiffs visited the Department of Consumer Affairs in Bayamón.

given an interpreter they thought was unqualified, and the last time they were given

a qualified interpreter.[10]  DSMF ¶ 8; PRDSMF ¶ 8.  Employees from the DOE were

---

[10]    DSMF ¶ 8 reads: "In 2019, Plaintiffs visited the Department of Education about four times, and they were afforded an interpreter, but according to Plaintiffs, some of the interpreters were not of good quality."

Plaintiffs deny DSMF ¶ 8, saying, "The Co-defendant misinterpreted what Mrs. Anixa said. The Plaintiff said that the first time she went to the public entity, there was no interpreter and it was not until the fourth visit that she was able to get a qualified interpreter with whom she could communicate." PRDSMF ¶ 8 (citing *Santiago Dep.* 39:1-10).

The relevant portion of the colloquy reads:

Q. So, in 2019 how many times did you go to the Department of Education in Morovis?
A. I'm not sure that there might be like four times, five times, that we met with the director in there to get assistance.  Yes, I think four or five times . . ..
Q. And each time did you request an interpreter?
A. Always.  Always.
Q. And none was provided?
A. At the beginning, no.  We asked for, for the interpreter and there were no interpreters and we stayed with not understanding the process and we talked with the director in there or we talked with some teachers and social workers, but again, no interpreter.... We tried again to make some communication, but . . . They get an interpreter, but the quality of the communication wasn't the right one, at that time. . .. We emphasized that we need an interpreter, and they gave a new one, but again, we weren't satisfied with the quality of the communication we were given and we requested for another interpreter that we asked, with all respect, that we can't feel comfortable with the communication because there were some lacks of communication in the, in the process and then an interpreter showed up.
And it was the same interpreter than the last time we mentioned, "Hey, we asked for another interpreter because with this interpreter the communication wasn't working." They said, "Oh, we didn't know, it was the same interpreter," and finally I think that at that moment, yes, the interpreter, an interpreter was assigned, and the communication worked. So, yes, it was like three times we had the interpreter, but once really worked.
Q. You mentioned previously that in 2019 you went to the Department of Education about four times.  Of those four times, how many were you provided an interpreter?
A. In the first one there was no interpreter.  No, excuse me, yeah, no quality interpreter, no quality interpreter and the third time, yes, an interpreter that we felt comfortable with it, with the communication, but before that, no, no interpreter.
Q. Okay. So, the first time no interpreter at all in 2018?
A. Yes, there was some interpreter, but not a good quality interpreter.
Q. So, in 2018, the first time, there was an interpreter, but you understand it was not a, a, quality, not a qualified?
A. Correct.
Q. And on the second time there was an interpreter, but it was not qualified?  Can you repeat the answer?  I'm sorry.
A. I'm sorry, I'm trying to remember exactly, you know, have a good memory of what happened that day.  First time there was no interpreter...
Q. Uh-huh.

9

"very nice and sweet" when Plaintiffs requested a sign language interpreter.[11]  DSMF ¶ 62; PRDSMF ¶ 62.

### 5.    Plaintiffs and the Administration of Vocational Rehabilitation

The Administration of Vocational Rehabilitation (ARV) sponsors interpreter services for the deaf population as part of the vocational rehabilitation services established in the Workforce Innovation and Opportunity Act (WIOA).  DSMF ¶ 63; PRDSMF ¶ 63.  The ARV employs qualified personnel to serve the deaf population, and before the alleged dates of discrimination, each region had a video phone system to contact and provide interpretation services with ARV personnel fluent in sign

---

> A. ...second time, yes, but we were not satisfied with the communication process and the third time we had an interpreter, but it was the same interpreter of the first time and we asked that we want a different interpreter and the fourth time, yes, and...
> Q. Oh.
> A. ...a different interpreter shows.  Yes.  That last time.  Yeah. I think now I, I, I get it straight.

*Santiago Dep.* 36:4-39:10.

Based on the quoted portion of Ms. Santiago's deposition testimony, the Court concludes that they went to the DOE the first time and no interpreter was available.  They went two more times and there was an interpreter, but the interpreter was insufficient.  They went a fourth time and were finally given an interpreter who was of sufficient quality.

Viewing these facts and drawing all reasonable inferences in favor of the nonmoving party, *see Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), the Court accepts the qualification and recounts the fact to read that Ms. Santiago's reference to "the same interpreter of the first time," is a reference to the "first time" she had an interpreter, which was during her second visit to the agency.  The Court amends the fact to reflect this qualification and otherwise admits it.

[11]    DSMF ¶ 62 states: "Employees from the Department of Education of Puerto Rico were very nice and sweet when they requested a sign language interpreter."

Plaintiffs qualify DSMF ¶ 62, saying that: "Although the Plaintiff claims that public employees were kind to her, she also reports that they did not have knowledge about effective communication with people with hearing disabilities and did not provide her with interpreter services."  PRDSMF ¶ 62.

The Court concludes that this objection, other than the portion that concedes the fact, is beyond the scope of the fact, and accordingly the Court admits DSMF ¶ 62 as submitted.

language.[12]  DSMF ¶ 64; PRDSMF ¶ 64.  The interpretation service is aimed at

providing support to facilitate communication for deaf or hard-of-hearing applicants

or consumers to optimize their vocational rehabilitation process toward employment

goals, according to their strengths, priorities, resources, interests, unique skills, and

informed choices.[13]  DSMF ¶ 65; PRDSMF ¶ 65.

The ARV in Bayamón, Puerto Rico sponsors interpreter services for the deaf

population.[14]  DSMF ¶ 11; PRDSMF ¶ 11.  The Bayamón Region's counseling service

---

[12]    In support of DSMF ¶ 64, the Appearing Defendants cite a Declaration under Penalty of Perjury of Yanira Perez Torruellas, listing her declaration as Exhibit P.  Exhibit P, however, is not a declaration of Ms. Perez.  The Court located Ms. Perez's declaration in Exhibit C.
        Plaintiffs deny DSMF ¶ 64, saying that "Mrs. Yanira Perez-Torruellas is not the Director of the Administration of Vocational Rehabilitation (ARV) throughout Puerto Rico; therefore, she does not have the knowledge to affirm that the ARV is in compliance in 'each region' of Puerto Rico."  PRDSMF ¶ 64.
        Plaintiffs' denial speaks to the weight the evidence should be given, which is immaterial at the summary judgment stage.  "It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury to resolve the parties' differing versions of truth at trial."  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Further, when the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"  *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).  Here, Plaintiffs do not offer a different version of truth to be determined at trial or to be viewed in the light most favorable to them as the nonmovant.  As the movants have provided evidence to support their fact, and Plaintiffs have provided no countervailing evidence to generate an issue of material fact, the Court admits DSMF ¶ 64 as submitted.
[13]    Plaintiffs deny DSMF ¶ 65 for the same reason they deny DSMF ¶ 64.  The Court admits DSMF ¶ 65 for the same reasons explained in the previous footnote.
[14]    DSMF ¶ 11 states: "The Administration of Vocational Rehabilitation in Bayamón, Puerto Rico has interpreters available and [Teletypewriter] service."  Plaintiffs deny the fact, saying that "[t]he Plaintiff was not able to find the document called 'Exhibit C' corresponding to the Administration of Vocational Rehabilitation in Bayamón Website.  DSMF ¶ 11 (citing DSMF, Attach. 3, *Unsworn Decl. Under Penalty of [Perjury of] Yanira Pérez Torruellas* (*Pérez Decl.*)).  However, the Plaintiff searched the mentioned website and did not find information about sign language interpreters."  PRDMSF ¶ 11 (citing *Consejos Colaboradores*, Administración de Rehabilitatión Vocacional, https://arv.pr.gov/ConsejosColaboradores/Pages/ default.aspx).
        The Court reviewed the *Pérez Declaration* and found support for the proposition that the agency sponsors interpreter services, not that it "has interpreters available."  The Court also finds no mention of TTY services.  Accordingly, the Court strikes the portion of the proffered fact that is not supported in the record, updates the rest of the fact to reflect the record, and admits the revised fact.

area has a video phone system to serve the deaf population and keeps attendance records for all visitors to the service offices.[15] DSMF ¶ 66; PRDSMF ¶ 66. In the ARV 2019 attendance archives, there are no records of Plaintiffs visiting the Bayamón Region or requesting a service.[16] DSMF ¶ 67; PRDSMF ¶ 67. The electronic file of the agency shows that in 2004 Plaintiff Manuel García Castro had a case with the ARV, interpreter services were among the services provided, and Mr. García had a satisfactory employment outcome.[17] DSMF ¶ 68; PRDSMF ¶ 68. Likewise, Plaintiff Anixa Santiago Rivera had a case with a rehabilitated

---

[15] Plaintiffs qualify DSMF ¶ 66, saying that "[t]he Commonwealth does not provide details of the supposed 'video phone system' (which is not specified if it is a type of Video Remote Interpreting) nor does it explain how it helps communication for people with disabilities." PRDSMF ¶ 66.

As Plaintiff's qualification is beyond the scope of the fact asserted, the Court admits DSMF ¶ 66 as submitted.

[16] DSMF ¶ 67 states: "In the ARV attendance archives, there are no records of plaintiffs visiting the Bayamón Region or that they requested a service during the year of 2019."

Plaintiffs qualify this fact, saying that "[t]he fact that the ARV has no record of the Plaintiffs' visit is because they could not communicate with the public entity, as alleged in the paragraph of the Amended Complaint (Docket 52)." PRDSMF ¶ 67.

"Under Federal Rule of Civil Procedure 56, a party cannot successfully oppose a motion for summary judgment by resting upon mere allegations or denials of his pleading. Mere allegations are not entitled to weight in the summary judgment calculus." *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022) (cleaned up) (quoting *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 312 (1st Cir. 2016); and *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 3 (1st Cir. 2010)). Moreover, First Circuit law is clear: a party may not rely on an unverified complaint to support a statement of material fact. *Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir. 1993) ("We have made it crystal clear that, in opposing summary judgment, a litigant 'may not rest upon mere allegations in, say, an unverified complaint'" (quoting *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991))).

Accordingly, the Court admits DSMF ¶ 67 as submitted.

[17] Plaintiffs qualify DSMF ¶ 68, saying that "[t]he Commonwealth alleges that interpreter services were provided to the Plaintiff in 2004 but does not attach any evidence of such services." PRDSMF ¶ 68. Appearing Defendants support their assertion by citing the declaration under penalty of perjury of Yanira Perez Torruellas. "Under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment." *See Rodriguez-Severino*, 52 F.4th at 458 (quoting *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir. 1993)). As such, Appearing Defendants have met their burden at this stage and the Court admits DSMF ¶ 68 as submitted.

employment outcome in the San Juan Region, with training and related services, including interpreter services for the deaf, provided.[18]  DSMF ¶ 69;  PRDSMF ¶ 69.

### 6.    Manuel García Castro and the Puerto Rico Court of Appeals

The main function of the intake counter of the Clerk's Office of the Puerto Rico Court of Appeals is the intake or filing of documents.  DSMF ¶ 70; PRDSMF ¶ 70. On July 17, 2019, Mr. García visited the Clerk's Office at 10:47 AM and requested sign language interpreter services to file an in forma pauperis motion.  DSMF ¶ 20; PRDSMF ¶ 20.  The Clerk's Office initially communicated with Mr. García through an individual, described by Appearing Defendants as a sign language interpreter from the court's Marshall's Office, who assisted Mr. García in completing the form to request sign language interpreter services: OAT-1855, *Orden para la Solicitud de Servicios de Intérprete, Acomodos Razonables y Grabación en Vídeo*.[19]  DSMF ¶ 21; PRDSMF ¶ 21.  The Director of Administrative Services of the Puerto Rico Court of Appeals, Velma L. Hernández Quintana, requested that sign language interpretation

---

[18]    Plaintiffs qualify DSMF ¶ 69 for the same reason as they qualify DSMF ¶ 68.  The Court admits DSMF ¶ 69 for the same reason described in the previous footnote.

[19]    DSMF ¶ 21 states: "The initial communication with Plaintiff Manuel García Castro was done through a sign language interpreter from the court's Marshall's Office who assisted Plaintiff in completing the form to request a sign language interpreter services OAT-1855, *Orden para la Solicitud de Servicios de Intérprete, Acomodos Razonables y Grabación en Vídeo*."

Plaintiffs qualify DSMF ¶ 21, saying, "[t]he first person who identified themselves as an interpreter on July 17, 2019, did not have the sufficient skills to assist the Plaintiff in the service he was requesting.  Therefore, that person cannot be considered an interpreter.  As a result, court employees had to call a second interpreter, making Mr. Manuel wait for more than a few hours." PRDSMF ¶ 21.

The final sentence of Plaintiffs' qualification is beyond the scope of the fact asserted.  The rest of the qualification is based on a factual issue: the relative skill of the individual who helped Mr. García and whether that person had sufficient skills to be considered an interpreter.  The Court updates the fact to demonstrate it is the Appearing Defendants' perception that the individual that helped Mr. García was a sign language interpreter, and otherwise admits the DSMF ¶ 21.

services be provided that same day at 1:30 PM.[20]  DSMF ¶ 22; PRDSMF ¶ 22.  Later that day, the Puerto Rico Court of Appeals provided Mr. García with interpreter services from 1:43 PM to 2:00 PM via a certified sign language interpreter from ASL Services Latino, PR, an entity hired by the Judiciary to provide sign language interpreter services.[21]  DSMF ¶ 23; PRDSMF ¶ 23.

### 7.    Manuel García Castro and the Department of Labor

On May 24, 2019, an administrative hearing was held in the Department of Labor of Puerto Rico (DOL) and sign language interpreter, Tess Dozier, and Plaintiff Manuel García Castro were present.  DSMF ¶ 12; PRDSMF ¶ 12.

---

[20]    Plaintiffs qualify DSMF ¶ 22, saying: "The Commonwealth claims that a 'certified sign language interpreter from ASL Services Latino, PR' was provided, but no information about that interpreter is attached.  The Plaintiff can only confirm that an interpreter was provided 'later during the day,' but does not have any information about the company from which the interpreter came."  PRDSMF ¶ 22.
        In this fact, Appearing Defendants do not claim that the service provided was from an interpreter from ASL Services Latino as Plaintiffs suggest, only that the request was made.  As follows, this qualification is beyond the scope of the fact.  The Court therefore admits DSMF ¶ 22 without qualification.

[21]    Plaintiffs deny DSMF ¶ 23, saying: "The information about the hours that Mr. Manuel had to wait on July 17, 2019, for an interpreter service is not reliable, especially because the alleged discrimination happened a long time ago and Mrs. Velma L. Hernández's memory cannot be that accurate.  The truth is that the Plaintiff was left with the feeling of exclusion and made it clear that the service was not provided until later in the afternoon of that day."  PRDSMF ¶ 23.
        As far as the timing not being reliable, the Court determines this claim is supported by three statements signed under penalty of perjury by individuals who were present the day in question and privy to what occurred that day.  *See* DSMF, Attach. 7, *Dep. of Ruth Irizzary Negrón*; *id.*, Attach. 8, *Dep. of Velma L. Hernández Quintana*; *id.*, Attach. 10, *Dep. of Gilberto García Camacho*.  Plaintiffs provide no evidence to undermine these three declarations submitted under penalty of perjury.  *See Rodriguez-Severino*, 52 F.4th at 458 ("Under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment" (quoting *Goldman*, 982 F.2d at 689)).  As far as Mr. García's feeling of exclusion brought about by having to wait, the Court finds the denial/qualification is beyond the scope of the fact asserted.  Accordingly, the Court admits DSMF ¶ 23 in its entirety.

Mr. García made an appointment with an employee named Sonia at DOL.[22]
DSMF ¶ 15; PRDSMF ¶ 15.  On November 26, 2019, Mr. García visited the DOL.
DSMF ¶ 13;  PRDSMF ¶ 13.  Employees from the DOL were frustrated that a sign
language interpreter was not available for Mr. García during his November 26, 2019
visit.[23]  DSMF ¶ 14; PRDSMF ¶ 14.  The DOL coordinated an appointment for Mr.
García with a sign language interpreter to take place on December 5, 2019.[24]  DSMF
¶ 16; PRDSMF ¶ 16.  In the end, Mr. García received sign language interpreter

---

[22]    DSMF ¶ 15 reads: "Plaintiff made an appointment beforehand with the Department of Labor
of Puerto Rico with an employee named Sonia, but she was transferred to an office in Carolina and as
a result, the appointment was delayed."

Plaintiffs deny DSMF ¶ 15, saying that: "The reason why the Department of Labor did not
provide an interpreter service is not because the employee Sonia was transferred.  The Commonwealth
intends to excuse the lack of compliance with the duty of effective access with a situation that has
nothing to do with the facts.  In fact, Mr. Manuel García explained that he was given no reason why
an interpreter was not provided to him."  PRDSMF ¶ 15 (quoting DSMF, Attach. 5, *Dep. of Mr. Manuel
García* at 20:5-14 (*García Dep.*)).

After reviewing the relevant portion of Mr. García's deposition, *see García Dep.* at 18:10-20:14,
the Court finds only part of DSMF ¶ 15 is supported.  At first, Mr. García testified that Sonia was "[a]n
inspector."  *Id.* at 19:1-2.  Later, Mr. García said that "Sonia informed [him] that there was no
interpreter, that they called, but the interpreter didn't show up."  *Id.* at 20:8-10.  From this colloquy it
seems clear that Sonia was an inspector, not an interpreter.  Moreover, it seems unlikely that Sonia
could have both been transferred at the time of this meeting and was physically at the meeting to tell
Mr. García that there was no interpreter on the way.  Regardless, it undermines the Appearing
Defendants' allegation that because Sonia "was transferred to an office in Carolina . . . as a result, the
appointment was delayed."  The Court strikes this portion of DSMF ¶ 15 and admits the rest of the
fact, which was not contested.

[23]    Plaintiffs qualify DSMF ¶ 14, saying that "[a]lthough the employees of the Department of
Labor of Puerto Rico were frustrated, this is not proof of compliance by the Commonwealth of Puerto
Rico.  In fact, it is quite the opposite.  The frustration of the employees has to do with the fact that
they could not provide the reasonable accommodations requested by Mr. Manuel García because they
did not have the necessary training or resources."  PRDSMF ¶ 14.

The Court determines that this qualification, other than the portion that concedes the fact, is
beyond the scope of the fact asserted, and admits the DSMF ¶ 14.

[24]    Plaintiffs deny DSMF ¶ 16, saying: "Although the Co-defendant provides two emails sent on
different dates far apart from each other, with this evidence, it is not possible to affirm that the
interpreter service was provided on the date that the Commonwealth alleges.  Additionally, Mr.
Manuel García indicates that 'at the end' of the process, he received the interpreter service, but he did
not specify on what date this occurred."  PRDSMF ¶ 16.

As this denial is beyond the scope of the fact, the Court admits DSMF ¶ 16 in its entirety.

services from the DOL,[25] DSMF ¶ 17; PRDSMF ¶ 17; however, he was dissatisfied both because of the decision made in the administrative hearing and because interpreters were not always provided throughout the process.[26, 27]    DSMF ¶ 18; PRDSMF ¶ 18.

### 8.    The Attempts of the Puerto Rico Executive Branch to Support the Deaf Community

Before the Office of Liaison with the Deaf Community was established, the nonhearing community was originally served by the Office of the Advocate for People

---

[25]    DSMF ¶ 17 reads: "On December 5, 2019, Plaintiff Manuel García received sign language interpreter services from the Department of Labor of Puerto Rico."

Plaintiffs deny DSMF ¶ 17, saying: "The Plaintiff never admitted to receiving interpreter services on December 5, 2019.  In fact, he stated that he doesn't remember the dates well but that the service was provided to him long after he first requested it."  PRDSMF ¶ 17.

After reviewing Mr. García's testimony, *see García Dep.* at 20:1-3, the Court concludes Mr. García testified to having received interpreter services, but he did not give a clear answer when asked on what date he received them.  The Court concludes the date portion of the fact is unsupported, strikes that portion of DSMF ¶ 17, and otherwise admits the fact.

[26]    DSMF ¶ 17 states: "Plaintiff Manuel García Castro was dissatisfied with the Department of Labor because of the decision that was made in the administrative hearing."

Plaintiffs deny DSMF ¶ 17, saying: "What the Co-defendant alleges has nothing to do with what the Plaintiff claimed.  Mr. Manuel García indicated that his dissatisfaction with what happened at the Department of Labor was related to the lack of provision of interpreters throughout the process and the resulting outcome."  PRDSMF ¶ 17.

While Plaintiffs' denial is overstated insofar as it says DSMF ¶ 17 "has nothing to do with what the Plaintiff claimed," the second sentence in the denial more accurately represents what Mr. García said at his deposition.  Mr. García explicitly testified that his dissatisfaction was for "both the reasons" at the end of an exchange discussing both that interpreters were not provided and that the decision was made against him.  *See García Dep.* at 22:10-25.  The Court updates DSMF ¶ 17 to reflect Mr. García's statements more accurately and otherwise admits it.

[27]    DSMF ¶ 19 states: "Plaintiff Manuel García Castro does not know who Faustino Xavier Betancourt is."  Plaintiffs deny DSMF ¶ 19, saying: "The Plaintiff asserts that he cannot remember the names of all the people he knows or has contact with."  PRDSMF ¶ 19.

During his deposition Mr. García was asked if he knew Faustino Xavier Betancourt, to which he responded, "No. Well, there are many people that I know, but don't remember their exact names. During the years until now, 2022, I will forget.  I don't remember all.  Any my list.  Because people that I stay in touch constantly, yes.  I remember that.  Now, I can't recall."  *García Dep.* at 24:21-25:1.

The Court concludes Mr. García equivocated and drawing all reasonable inferences in his favor, as the Court must, *see Ophthalmic Surgeons*, 632 F.3d at 35, the Court strikes DSMF ¶ 19 as unsupported by the record.

16

with Disabilities.[28]   DSMF ¶ 24; PRDSMF ¶ 24.   At some point, several agencies

within the Executive Branch had their own in-house sign language interpreters,

including the Department of Family, Puerto Rico Housing Department, and the

AVR.[29]   DSMF ¶ 25; PRDSMF ¶ 25.   The Office of Advocacy for People with

Disabilities has a professional service contract with a company to assure that

interpretation services are provided wherever they are needed within the executive

branch.[30]   DSMF ¶ 26; PRDSMF ¶ 26.

---

[28]    Plaintiffs qualify DSMF ¶ 24, saying: "While Mr. Troche mentions in his deposition that before the existence of the Liaison Office, there was another entity responsible for serving individuals with hearing disabilities, he does not explain what the functions of that entity were or what methods it used for the inclusion of deaf individuals." PRDSMF ¶ 24.
       This qualification is beyond the scope of the fact, so the Court admits DSMF ¶ 24 without qualification.

[29]    DSMF ¶ 25 says: "Several agencies within the Executive branch have their own in-house sign language interpreters, like the Department of Family, Puerto Rico Housing Department, and the Vocational Rehabilitation Administration."
       Plaintiffs qualify DSMF ¶ 25, saying: "The majority of the agencies mentioned by Mr. Troche are not part of the entities mentioned in the Complaint. Mr. Troche also does not explain where he knows that there is a permanent interpreter service in those public entities." PRDSMF ¶ 25.
       Both of these qualifications are beyond the scope of the fact asserted. In reviewing the transcript of Mr. Troche's deposition, however, the Court notes that Mr. Troche uses the past tense to describe when the agencies had in-house interpreters. *See* DSMF, Attach. 11, *Dep. of Juan José Troche Villanueva* at 13:16-25 (*Troche Dep.*). Therefore, the Court updates the fact to reflect that testimony, and otherwise admits DSMF ¶ 25.

[30]    Plaintiffs qualify DSMF ¶ 26 at length, saying:

       Mr. Troche refers to a contract that exists in the Office of Advocacy for People with Disabilities for the provision of interpreters, however, the Commonwealth does not attach a copy of said contract. In addition, Mr. Troche does not explain why the Executive Branch allegedly depends on the provision of interpreters by the Office of Advocacy for People with Disabilities, if the Liaison Office was created specifically for that purpose. The director of the Liaison Office excuses his current lack of compliance with the responsibilities assigned by Law 22-2021, indicating that there is another entity that allegedly provides interpreter services. Additionally, Mr. Troche indicated that by January 2023, the entire "structuring" process would be ready, however, the Commonwealth did not provide any documents proving that there is any progress in that process.

PRDSMF ¶ 26.
       These qualifications are beyond the scope of the fact asserted and the Court admits DSMF ¶ 26.

There is now a Liaison Office of the Deaf Community (OECS), which for the 2022-2023 fiscal year had a budget of $300,000 to comply with the first phase of structuring the office, not including salaries that are funded through professional services funding.[31]  DSMF ¶ 27; PRDSMF ¶ 27.  On January 30, 2023, OECS filed an Annual Report to the Puerto Rico Legislature pursuant to Law 22-2021.  DSMF ¶ 29; PRDSMF ¶ 29.

During Hurricane Fiona, the OECS was activated before the emergency and served the deaf community by integrating them in the emergency response plan and providing direct care.  DSMF ¶ 30; PRDSMF ¶ 30.  The OECS prepared visual updates on the hurricane in Sign Language.[32]  DSMF ¶ 30; PRDSMF ¶ 30.  Also, it was possible to physically reach the houses of deaf people who were affected,

---

[31]    DSMF ¶ 27 states: "For the 2022-2023 fiscal year, the Liaison Office of the Deaf Community has a budget of $300,000.00 to comply with the first phase of structuring."
    Plaintiffs qualify DSMF ¶ 27, saying: "Mr. Troche mentioned that the amount of $300,000 was the Liaison Office's budget, however, he also stated that this budget was exclusively intended for the payment of 'professional services.'  It was also acknowledged that there are not enough funds to hire personnel or complete the 'structuring phase' of the Liaison Office."  PRDSMF ¶ 27.
    When asked what the budget of the Liaison Office of the Deaf Community was, Mr. Troche responded $300,000.  *See Troche Dep.* at 25:14-19.  Mr. Troche was then asked if that budget included salaries and he responded it did not and that salaries were in a different funding classification, professional services.  *See id.* at 25:20-23.  This does not, as Plaintiffs contend, suggest the budget is less than $300,000 for the first phase of structuring from July 2022 through June 2023.  Moreover, Plaintiffs intimate as much.  *See* PRDSMF ¶ 33 ("[T]he annual report mentions that there is $240,000 available for hiring 'professional services' for the 'evaluation stage'").  The Court, therefore, admits the DSMF ¶ 27 without qualification.

[32]    Plaintiffs qualify DSMF ¶ 30, saying: "Although the Liaison Office's annual report states that this entity delivered visual material and communication aids to people during the emergency generated by Hurricane Fiona, the photos in said report do not show the delivery of any such materials.  Only some people can be seen delivering plastic bags to some residents of Puerto Rico."  PRDSMF ¶ 30.
    DSMF ¶ 30 does not say that the aids were delivered, only that they were "prepared," rendering this objection beyond the scope of the fact.  Accordingly, the Court admits DSMF ¶ 30 without qualification.

particularly in the center and south of the island during the last weeks of September 2022.  DSMF ¶ 30; PRDSMF ¶ 30.

In its Annual Report to the Puerto Rico Legislature, the OECS reported it is evaluating and inspecting closed school campuses and other properties to obtain suitable facilities as its headquarters to provide services to the deaf community,[33] DSMF ¶ 31; PRDSMF ¶ 31, and the OECS submitted its organizational structuring plan for review to the Office of Management and Budget of Puerto Rico.[34]  DSMF ¶ 32; PRDSMF ¶ 32.  In phases, the Liaison Office intends to recruit the personnel necessary to carry out the functions and responsibilities of the OECS; once the proposed budget for fiscal year 2023-2024 is approved, the recruitment process will begin by hiring the necessary personnel to carry out the functions and responsibilities of the OECS.[35]  DSMF ¶ 33; PRDSMF ¶ 33.  The OECS is negotiating with a video

---

[33]    Plaintiffs qualify DSMF ¶ 31, saying:

> The Commonwealth does not present adequate evidence regarding the process of establishing a physical office.  On the contrary, it only provides statements of goodwill with which it seeks to excuse its non-compliance with Law 22-2021.  Finally, the annual report of the Liaison Office only indicates that they are "in the process of evaluating and inspecting closed schools and other properties with the intention of finding the right facilities," but they do not provide any information about a specific location.

PRDSMF ¶ 31.
       The Court clarifies DSMF ¶ 31 to indicate this is what the Liaison Office stated in its report, and otherwise admits the fact, as the remainder of Plaintiffs' qualification is beyond the scope of the fact asserted.
[34]     Plaintiffs qualify DSMF ¶ 32, saying: "The Co-defendant announces in the annual report that it attaches a copy of the draft of the structuring proposal as 'Appendix 4,' but this has not been provided for the summary judgment stage in the captioned case."  PRDSMF ¶ 32.
       The Court notes this qualification, concludes it is beyond the scope of the fact asserted, and admits DSMF ¶ 32.
[35]    DSMF ¶ 33 states: "The Liaison Office will recruit the personnel necessary to carry out the functions and responsibilities of the OECS.  It will be carried out in stages and in phases.  Once the proposed budget for fiscal year 2023-2024 is approved, the recruitment process will begin by hiring the necessary personnel to carry out the functions and responsibilities of the OECS."

relay service company that it hopes will manage the assignment of a telephone number through the video relay service, so that any deaf person can communicate through a Sign Language interpreter.[36]   DSMF ¶ 34; PRDSMF ¶ 34.   The OECS intends to offer training and workshops on deaf culture to provide social and governmental transformation and inclusion.[37]   DSMF ¶ 35; PRDSMF ¶ 35.   The OECS also intends to hold four town hall meetings with the deaf community within each cardinal point of the island of Puerto Rico to publicize the statutory provisions of Law 22-2021 and the initial work plan of the OECS.[38]   DSMF ¶ 36; PRDSMF ¶ 36.

---

Plaintiffs deny DSMF ¶ 33, saying: "The Liaison Office will not recruit enough staff to properly carry out its functions.  In fact, the annual report mentions that there is $240,000 available for hiring 'professional services' for the 'evaluation stage.'  It is also reported that the hiring process must be completed by February 28, 2023, and the Co-defendant did not provide any certification that such a process has been carried out."  PRDSMF ¶ 33.

Given the record before it, the Court cannot conclude DSMF ¶ 33 is fact, not merely aspiration.  However, it is the Plaintiffs' burden of contradicting the fact and they have failed to produce any evidence to contradict DSMF ¶ 33.  Accordingly, the Court qualifies DSMF ¶ 33 to confirm that this is their aspiration and otherwise admits DSMF ¶ 33.

[36]    DSMF ¶ 34 states: "The Liaison Office is negotiating with a video relay service company that will manage the assignment of a telephone number through the video relay service, so that any deaf person can communicate through a Sign Language interpreter."

Plaintiffs qualify DSMF ¶ 34, saying: "Given that the current budget of the Liaison Office can only be allocated to "professional services," it is not possible to acquire a Video Relay Services system, hire the necessary interpreters, and advertise the program among the deaf community.  The statement made in the annual report is a mere statement of intention."  PRDSMF ¶ 34.

Whether the negotiations will be fruitful or can possibly be fruitful is beyond the scope of the fact.  Negotiations are actions that support "mere statement[s] of intention."  PRDSMF ¶ 34.  However, the Court alters the fact to indicate OCES hopes the negotiations will result in the video relay service company managing all these systems.  The Court otherwise admits DSMF ¶ 34.

[37]    DSMF ¶ 35 states: "The Liaison Office will offer training and workshops on deaf culture to provide social and governmental transformation and inclusion."

Plaintiffs qualify DSMF ¶ 35, saying: "The Commonwealth makes another statement of intention.  The Co-defendant states that they 'will offer training and workshops' only because Law 22-2021 requires it, but they do not provide contracts or evidence that those activities will be carried out."  PRDSMF ¶ 35.

The Court alters the fact to demonstrate it is the Liaison Office's intention, and otherwise admits DSMF ¶ 35.

[38]    Plaintiffs qualify DSMF ¶ 36 for the reason stated in the previous footnote.  The Court alters the fact to demonstrate that it reflects the intention of OECS and otherwise admits DSMF ¶ 36.

Several agencies from the Executive Branch—the Department of the Family, the Office of Management and Budget, the Office of the Governor, the Ombudsman for Persons with Disabilities, the OATRH,[39] and the Department of Finance—have complied with the work plans and have facilitated the implementation of Law 22-2021.[40] DSMF ¶ 37; PRDSMF ¶ 37.

On October 21, 2021, the Governor of Puerto Rico, Honorable Pedro Pierluisi, inaugurated a new sign language interpreting service to serve the Deaf Community in the CESCOs[41] of Puerto Rico.[42] DSMF ¶ 61; PRDSMF ¶ 61.

---

[39]    DSMF ¶ 37 refers to OATRH without describing what the acronym stands for.

[40]    DSMF ¶ 37 states: "Several agencies from the executive branch are currently in the process of implementing Law 22-2021 and pilot projects have been submitted with the work plans. Among the agencies are the Department of the Family, Office of Management and Budget, Office of the Governor, Ombudsman for Persons with Disabilities, OATRH, Department of Finance, among others."

Plaintiffs qualify DSMF ¶ 37, saying: "The annual report does not indicate that the Executive Branch entities named are in the process of adapting to Law 22-2021. It only indicates that they have cooperated with the Liaison Office." PRDSMF ¶ 37.

Plaintiffs are correct that the annual report does not indicate the government agencies are "in the process of implementing." The report also does not say that the agencies "have cooperated." The report says they have "complied with the work plans and have been facilitators." *See* DSMF, Attach. 12, *Ann. Rep. Liaison Off. of the Deaf Comm. with the Gov't of P.R.* at 24 (*2023 Annual Report*). The Court alters DSMF ¶ 37 to conform with the language used in the report and otherwise admits the fact.

[41]    DSMF ¶ 61 refers to CESCOs of Puerto Rico without describing what the acronym stands for.

[42]    Plaintiffs qualify DSMF ¶ 61, saying: "The Commonwealth attaches a press release from a media outlet called 'notiseis360pr,' which it claims introduces evidence of the creation of a sign language interpreting service. However, if such a system exists, appropriate evidence of it would not be a press release." PRDSMF ¶ 61.

Plaintiffs' qualification speaks to the weight the evidence should be given, which is immaterial at the summary judgment stage. "It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury to resolve the parties' differing versions of truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Further, when the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy*, 252 F. App'x at 332. Here, Plaintiffs do not offer a different version of truth to be determined at trial or to be viewed in the light most favorable to them as the nonmovant. As the movants have provided evidence to support their fact, and Plaintiffs have not provided anything to demonstrate an issue of fact, the Court admits DSMF ¶ 61 as submitted.

9.    **The Attempts of the Puerto Rico Judiciary to Support the Deaf Community**

Liani Cabán Reyes, the Accessibility Program Coordinator for the Puerto Rico Judiciary, believes that over the past two decades the Judiciary has taken proactive steps to remove accessibility barriers for people with disabilities, including deaf people and those with hearing loss, and to ensure their access to justice.[43]  DSMF ¶ 38; PRDSMF ¶ 38.

Ms. Cabán also asserts that the initiatives the Judiciary has developed during the past three years have been aimed at fulfilling the Puerto Rico Judiciary's Strategic Plan 2020-2025, Map Towards a Cutting-Edge Justice (Strategic Plan), in which access to justice was identified as one of the thematic axes.[44]  DSMF ¶ 39;

---

[43]    DSMF ¶ 38 states: "Over the past two decades, the Judiciary has taken proactive steps to remove accessibility barriers for people with disabilities including the population of people with hearing loss and deaf people in the country and ensure their access to justice."
    Plaintiffs qualify DSMF ¶ 38, saying:

> Defendant fails to show documents proving how the Judiciary has removed accessibility barriers for people with disabilities.  It relies only on an unsworn declaration by Liani Cabán Reyes.  Mrs. Reyes is the Accessibility Program Coordinator for the Puerto Rico Judiciary, being in that position she must be able to back-up her affirmations with documental evidence of but she fails to do so.  For that reason, at the current moment, the plaintiff lacks the necessary knowledge to confirm the veracity of the statements made by the defendant.  Due to the insufficiency of information available to the plaintiff, it is presently unclear as to the truthfulness of the defendant's claims.

PRDSMF ¶ 38.
    The Court alters DSMF ¶ 38 to clarify that it reflects the belief of Ms. Reyes and otherwise admits the fact.  The Court again notes that "an unsworn statement signed under penalty of perjury may be used . . . to support or oppose a motion for summary judgment."  *Rodriguez-Severino*, 52 F.4th at 458.

[44]    DSMF ¶ 39 states: "The initiatives developed during the past three years have been aimed at fulfilling the Puerto Rico Judiciary's Strategic Plan 2020-2025, Map towards a Cutting-Edge Justice (Strategic Plan), in which access to justice was identified as one of the thematic axes. Through this axis, the Judiciary seeks to ensure effective access to justice and the courts for every person who, due to their age, gender, sexual identity, physical or mental condition, or social, ethnic, racial, or economic circumstances, faces barriers to asserting their rights."

PRDSMF ¶ 39.  She also avers that through the access to justice axis, the Judiciary seeks to ensure effective access to justice and the courts for every person who, due to their age, gender, sexual identity, physical or mental condition, or social, ethnic, racial, or economic circumstances, faces barriers to asserting their rights. DSMF ¶ 39; PRDSMF ¶ 39.  The Strategic Plan from the Judiciary aims to provide procedural equity and eliminate access to justice barriers faced by vulnerable individuals.[45] DSMF ¶ 40; PRDSMF ¶ 40.  One of the objectives outlined in this goal is to deploy technological innovations to ensure access to courts and judicial services for all individuals with disabilities.  DSMF ¶ 40; PRDSMF ¶ 40.  For several years, with the Puerto Rico Assistive Technology Program (PRATP), an entity attached to the Medical Sciences Campus of the University of Puerto Rico, the Judiciary has maintained aims to facilitate knowledge exchange and experiences for the development of strategies that achieve greater access to justice by providing technological assistance to people with disabilities.[46]  DSMF ¶ 41; PRDSMF ¶ 41.

---

Plaintiffs qualify DSMF ¶ 39, saying: "This statement is focused on what is intended to be done, rather than what has been done so far.  The Co-defendant does not specify exactly what initiatives have been developed during the past three years."  PRDSMF ¶ 39.

The Court disagrees that the focus of DSMF ¶ 39 is the intention of the Puerto Rico Judiciary to improve access to justice; instead, it seems that Ms. Reyes is attributing purpose to the Judiciary's actions. The Court agrees that the fact does not specify which initiatives have been developed but that qualification, however, is beyond the scope of the fact.  Accordingly, the Court alters DSMF ¶ 39 to show these are Ms. Reyes' assertions, not verified facts, and otherwise admits DSMF ¶ 39.

[45]    Plaintiffs qualify DSMF ¶ 40, saying: "This statement is focused on what is intended to be done, rather than what has been done so far.  The Co-defendant does not specify exactly how it has accomplished its goal so far."  PRDSMF ¶ 40.

The Court concludes this qualification is beyond the scope of the fact and admits DSMF ¶ 40 without qualification.

[46]     Plaintiffs qualify DSMF ¶ 41, saying:

First it does not include documents supporting its collaboration agreement with the Puerto Rico Assistive Technology Program it relies only in an unsworn declaration by Liani Cabán Reyes.  Mrs. Reyes is the Accessibility Program Coordinator for the Puerto Rico Judiciary, being in that position she must be able to back-up her affirmations with

Ms. Cabán believes the Judiciary reaffirms its access to justice policy by implementing technological assistance in various projects aimed at improving accessibility to the courts for people with disabilities. [47]  DSMF ¶ 42; PRDSMF ¶ 42.

The Judicial Branch of Puerto Rico has acquired technological equipment to assist the deaf community, including FM/Assisting learning equipment, pocket amplifiers, visual communication devices, and signage to let people know that equipment is available.[48]  DSMF ¶ 28; PRDSMF ¶ 28.

Since 2018, as part of the technical assistance provided by the Puerto Rico Assistive Technology Program, technological assistance equipment has been used in criminal, civil, and administrative judicial processes in the commonwealth's judicial regions.[49]  DSMF ¶ 43; PRDSMF ¶ 43.  Currently, the Judiciary has around seventy

---

documental proof but she fails to do so.  Additionally, this statement is focused on what is intended to be done, rather than what has been done so far, Co-defendant does not specify exactly how it has accomplished its goal so far.

PRDSMF ¶ 41.
    The Court again notes that "an unsworn statement signed under penalty of perjury may be used . . . to support or oppose a motion for summary judgment."  *Rodriguez-Severino*, 52 F.4th at 458.  The other qualifications are beyond the scope of the fact.  The Court therefore admits DSMF ¶ 41 as submitted.
[47]    DSMF ¶ 42 states: "The Judiciary reaffirms its access to justice policy by simultaneously implementing technological assistance in various projects aimed at improving accessibility to the courts for people with disabilities."
    Plaintiffs qualify DSMF ¶ 42, saying: "This statement is focused on what is intended to be done, rather than what has been done so far.  Also, it is generic, Co-defendant does not specify exactly what projects have been implemented so far."  PRDSMF ¶ 42.
    The Court alters the fact to demonstrate this is Ms. Reyes' perception and otherwise admits DSMF ¶ 42, as the remainder of Plaintiffs' qualification is beyond the scope of the fact asserted.
[48]    Plaintiffs qualify DSMF ¶ 28, saying: "The Commonwealth bases its claim regarding the acquisition of communication equipment by the Judicial Branch on the statement of Mr. Troche, who is part of the Executive Branch.  As Mr. Troche himself specified, he 'couldn't tell (...) categorically whether they are complying completely.'"
    These qualifications are beyond the scope of the fact and the Court admits DSMF ¶ 28 without qualification.
[49]    Plaintiffs qualify DSMF ¶ 43, saying:

personal and remote sound amplification devices, which are distributed among the Supreme Court of Puerto Rico, the Court of Appeals, the Office of Court Administration (OAT), judicial centers, and peripheral courts.[50]  DSMF ¶ 44; PRDSMF ¶ 44.

In 2019, to train Judiciary personnel in the use of this technological assistance equipment, the OAT distributed a Guide on Access to Justice for People with Hearing Loss to all employees of the Judiciary.[51]  DSMF ¶ 45; PRDSMF ¶ 45.  Law No. 174-2018, the *Law to facilitate access to justice for people with conditions that impede their effective communication*, was approved in August 2018 and became effective in February 2019.  DSMF ¶ 46; PRDSMF ¶ 46.  Due to the importance of Law No. 174-2018 in judicial processes, the OAT formed an internal committee to assess the scope of the law, evaluate the purchase of necessary technological equipment, review the Rules and Procedures for the selection, request, and compensation of interpreters in

---

Defendant fails to show documents proving the technical assistance provided by the PRATP, and therefore all the actions regarding it.  It relies only in an unsworn declaration by Liani Cabán Reyes.  Mrs. Reyes is the Accessibility Program Coordinator for the Puerto Rico Judiciary, being in that position she is able to back-up her affirmations with documental proof but she fails to do so.  For that reason, at the current moment, the plaintiff lacks the necessary knowledge to confirm the veracity of the statements made by the defendant.  Due to the insufficiency of information available to the plaintiff, it is presently unclear as to the truthfulness of the defendant's claims.

PRDSMF ¶ 42.

Ms. Reyes' declaration is signed under penalty of perjury.  *See* DSMF, Attach. 13, *Unsworn Decl. Under Penalty of Perjury of Liani Cabán Reyes* (*Reyes Decl.*).  As noted above, "an unsworn statement signed under penalty of perjury may be used . . . to support or oppose a motion for summary judgment."  *Rodriguez-Severino*, 52 F.4th at 458.  The Court, therefore, admits DSMF ¶ 43 as submitted.

[50]    Plaintiffs qualify DSMF ¶ 44 for the same reason they qualify DSMF ¶ 43, namely its reliance on the unsworn declaration by Ms. Reyes.  The Court admits DSMF ¶ 44 for the reason explained in the previous footnote.

[51]    Plaintiffs qualify DSMF ¶ 45 for the same reason as they qualify DSMF ¶ 43-44.  The Court admits DSMF ¶ 45 for the reason explained in footnote 49.

the Judiciary, and coordinate training for judges and staff.[52]  DSMF ¶ 46; PRDSMF

¶ 46.  Through Circular Letter No. 15 (Fiscal Year 2018-2019), the OAT incorporated

the applicable provisions of Law No. 174-2018 into the Rules and Procedures.  DSMF

¶ 46; PRDSMF ¶ 46.

    To guarantee the rights of the deaf community in the courts, the Judiciary

signed a contract with a company that offers in-person and remote sign language

interpretation services, as well as coordinated emergency services in all of the

Judiciary's judicial regions and dependencies.[53]  DSMF ¶ 47; PRDSMF ¶ 47.  For

example, in 2021 the Judiciary signed a multiyear contract (2021-2024) to continue

providing necessary services for the deaf population.  DSMF ¶ 47; PRDSMF ¶ 47.

The contract includes providing in-person and remote sign language interpreters and

recording video capsules in sign language to disseminate on the Judiciary's website

and social media.    DSMF ¶ 47; PRDSMF ¶ 47.  In February 2023, the maximum

amount of this contract ($100,000.00) was amended to add an additional $53,000.00,

in response to the need for services of the deaf community.  DSMF ¶ 47; PRDSMF ¶

47.

    During 2019, in accordance with Law No. 174-2018, the Puerto Rican Judicial

Academy offered nine training sessions for judges focused on the rights of the deaf

---

[52]    Plaintiffs qualify this portion of DSMF ¶ 46 for the same reason as they qualify DSMF ¶ 43-45.  The Court admits DSMF ¶ 46 for the reason explained in footnote 49.

[53]    Plaintiffs qualify DSMF ¶ 47 based on its reliance on Ms. Reyes' declaration.  The Court admits DSMF ¶ 47 for the reason explained in footnote 49.

population and included the rights of the deaf population in the training offered to all newly appointed judges. [54]  DSMF ¶ 48; PRDSMF ¶ 48.

In 2019, internal form OAT-1855, Order for Interpreter Request, Reasonable Accommodations and Video Recording, was created.[55]  DSMF ¶ 49; PRDSMF ¶ 49. In addition to facilitating requests for language and sign language interpreters, hearing recordings under Law No. 174-2018, sound amplifiers, and other reasonable accommodations, this form allowed the OAT to collect data on the services requested and offered.  DSMF ¶ 49; PRDSMF ¶ 49.

The Accessibility Program has many functions, including responsibilities to:

- Periodically evaluate and verify the Judiciary's courts and dependencies' compliance with the ADA, as amended, and other local and federal laws that guarantee persons with disabilities the right of accessibility.
- Support the process of receiving and processing requests for reasonable accommodations and sign language interpreters.
- Recommend the acquisition of auxiliary equipment and services, such as assistive technology, to improve effective communication for people with hearing loss, and any other equipment that would be beneficial to improve access to justice.
- Collect data on requests for reasonable accommodations received and actions taken, requests for auxiliary equipment and its use, and any other statistics necessary to evaluate the provision of services to persons with disabilities.
- Coordinate and ensure compliance with collaboration agreements established as part of the Program.
- Develop and maintain close communication with organizations and communities that represent people with disabilities, to gather feedback on how to improve services.
- Promote the incorporation of the principles of "universal design" in the provision of services, and the conceptualization, design, and recommendation of physical facilities.

---

[54]    Plaintiffs qualify DSMF ¶ 48 for the same reason stated in the previous footnote.  The Court admits DSMF ¶ 48 for the reason explained in footnote 49.
[55]    Plaintiffs qualify DSMF ¶ 49 based on its reliance on Ms. Reyes' declaration. The Court admits DSMF ¶ 49 for the reason explained in footnote 49.

- Conduct periodic accessibility tests of the Judiciary Portal and develop a joint work plan to eliminate accessibility barriers.
- Collaborate with the Puerto Rican Judicial Academy and the Evaluation, Training, and Development Office in determining training needs on accessibility issues.
- Identify the architectural barriers that limit the access of people with disabilities to court facilities and promote the elimination of these barriers.[56]

DSMF ¶ 50; PRDSMF ¶ 50.

The Judiciary of Puerto Rico recognizes that training its judges and personnel is a fundamental aspect of raising awareness and creating consciousness about the needs and rights of people with disabilities.[57] DSMF ¶ 51; PRDSMF ¶ 51. That is why the Accessibility Program attached to the OAT, in collaboration with the Puerto Rican Judicial Academy and the Office of Evaluation, Training, and Development, have offered training on these issues for at least the past eight years. DSMF ¶ 51; PRDSMF ¶ 51. From 2015 to the present, dozens of trainings have been offered to more than 1,000 Judiciary officials covering topics including: awareness in the treatment of people with disabilities; creating accessible documents, assistive technology and access to justice; older persons and assistive technology; and assistive technology tools.[58] DSMF ¶ 52; PRDSMF ¶ 52. Since August 2016, in coordination with the Puerto Rican Judicial Academy, more than 70 newly appointed judges have been trained on the topic of Access to Justice and Assistive Technology by Puerto Rico

---

[56]    Plaintiffs qualify DSMF ¶ 50 based on its citation to Ms. Reyes' declaration. The Court admits DSMF ¶ 50 for the reason explained in footnote 49.
[57]    Plaintiffs qualify DSMF ¶ 51 for the reason stated in the previous footnote. The Court admits DSMF ¶ 51 for the reason explained in footnote 49.
[58]    Plaintiffs qualify DSMF ¶ 52 based on its citation to Ms. Reyes' declaration. The Court admits DSMF ¶ 52 for the reason explained in footnote 49.

Assistive Technology Program (PRATP) personnel, including Dr. Mauricio Lizama Troncoso.[59]  DSMF ¶ 53; PRDSMF ¶ 53.

The efforts of the Judiciary to promote access to justice for the deaf and hard of hearing population were strengthened during and after the COVID-19 pandemic.[60] DSMF ¶ 54; PRDSMF ¶ 54.  In March 2020, the General Guidelines for the Use of Videoconferencing System in the Courts of the Commonwealth of Puerto Rico were released, which include general provisions for offering remote interpretation services by video.  DSMF ¶ 54; PRDSMF ¶ 54.  These guidelines allow for remote interpretation services when a court requires the services of a language or sign language interpreter but no interpreter is immediately available in person, thereby facilitating processes and providing better access to justice.  DSMF ¶ 54; PRDSMF ¶ 54.

Additionally, the Judiciary has transparent masks to provide better service to individuals who are deaf or partially deaf.  DSMF ¶ 54; PRDSMF ¶ 54.  These masks enable effective communication with the deaf and hard of hearing population by facilitating lip reading and facial observation.  DSMF ¶ 54; PRDSMF ¶ 54.  They are used to complement available sign language interpreter services or sound amplification equipment.  DSMF ¶ 54; PRDSMF ¶ 54.  Information on the availability of such masks was provided to the general public.  DSMF ¶ 54; PRDSMF ¶ 54.

---

[59]    Plaintiffs qualify DSMF ¶ 53 based on its citation to Ms. Reyes' declaration.  The Court admits DSMF ¶ 53 for the reason explained in footnote 49.
[60]    Plaintiffs qualify DSMF ¶ 54 for the reason stated in the previous footnote.  The Court admits DSMF ¶ 54 for the reason explained in footnote 49.

On Poder Judicial's YouTube channel, and on Facebook, there are multiple informative videos and capsules with sign language interpreters.[61]   DSMF ¶ 55; PRDSMF ¶ 55.  These provide guidance on the operations of the Judiciary, as well as on its various programs, including the Accessibility Program, the Access to Justice Program for Persons with Mental Health Conditions, the Pro Se Litigant Program, the Youth Program, the Gender Equality and Equity Program, the Domestic Violence Case Program, and the Specialized Accommodations for Controlled Substances Cases.  DSMF ¶ 55; PRDSMF ¶ 55.  The videos also provide guidance on various legal processes and topics, including the processes of the specialized courts for gender-based and domestic violence cases, adoption, legal remedies under the Mental Health Law, the videoconference system in the courts, and smart courtrooms.  DSMF ¶ 55; PRDSMF ¶ 55.

The Judiciary and Microjuris confirmed their commitment to the deaf community by dedicating two "Court Tuesdays" during the Puerto Rican Deaf Community Week in September 2020 to accessibility issues in the courts and the services available to the deaf and hard of hearing community.[62]   DSMF ¶ 56; PRDSMF ¶ 56.

---

[61]     Plaintiffs qualify DSMF ¶ 55, saying: "As of the current moment, the plaintiff lacks the necessary knowledge to confirm the veracity of the statements made by the defendant.  Due to the insufficiency of information available to the plaintiff, it is presently unclear as to the truthfulness of the defendant's claims . . . because none of the links provided by Co-Defendant work."  PRDSMF ¶ 55.
       The Court again notes that "an unsworn statement signed under penalty of perjury may be used . . . to support or oppose a motion for summary judgment," *Rodriguez-Severino*, 52 F.4th at 458, and admits DSMF ¶ 55 as submitted.
[62]     Plaintiffs qualify DSMF ¶ 56 based on its citation to Ms. Reyes' declaration.  The Court admits DSMF ¶ 56 for the reason explained in footnote 49.

The Communication Assistance Board (TAC) is a tool that allows staff to more easily identify the functional communication methods of a person who has difficulty communicating.[63]  DSMF ¶ 57; PRDSMF ¶ 57.  As part of this project, the Judiciary distributed 200 Communication Assistance Boards among the 13 judicial regions, the Court of Appeals, the OAT, and the Supreme Court.  DSMF ¶ 57; PRDSMF ¶ 57.  Dr. Lizama of PRATP offered several virtual training sessions—which more than 300 officials attended—on Assistive Technology for Communication Accessibility, in which strategies for using this board were discussed.  DSMF ¶ 57; PRDSMF ¶ 57.  Currently, PRATP and Accessibility Program personnel visit the judicial regions to provide on-site training on the use of this tool and the assistive technology equipment available in the Judiciary.  DSMF ¶ 57; PRDSMF ¶ 57

In March 2022, the Judiciary created the document "Assistive Technology Equipment of the Judicial Branch, a Catalogue for Officials."[64]  DSMF ¶ 58; PRDSMF ¶ 58.  In this document, the Judicial Branch compiles information on the most used equipment to promote effective communication with people who have difficulty speaking or hearing, or who face visual challenges.  DSMF ¶ 58; PRDSMF ¶ 58.  In addition, the Judiciary shares information on the location of this equipment and some aspects to consider when using it.  DSMF ¶ 58; PRDSMF ¶ 58.

---

[63]    Plaintiffs qualify DSMF ¶ 57 for the same reason as stated in the previous footnote.  The Court admits DSMF ¶ 57 for the reason explained in footnote 49.
[64]    Plaintiffs qualify DSMF ¶ 58 based on its citation to Ms. Reyes' declaration.  The Court admits DSMF ¶ 58 for the reason explained in footnote 49.

The Judiciary's Accessibility Program is developing additional initiatives beyond those mentioned above.[65]  DSMF ¶ 59; PRDSMF ¶ 59.  For example, soon it will be publishing videos in sign language on various legal topics.  DSMF ¶ 59; PRDSMF ¶ 59. [66]

## III.    THE PARTIES' POSITIONS

### A.    Appearing Defendants' Motion for Summary Judgment

The Appearing Defendants "firmly assert that there are no genuine issues of material fact in this case and that they are entitled to judgment as a matter of law." *Defs.' Mot.* at 3.  They argue that "contrary to Plaintiffs' portrayal in the Amended Complaint, all allegations regarding the services provided to the deaf community in Puerto Rico are factually inaccurate, outdated and without merit" and "Plaintiffs

---

[65]    Plaintiffs deny DSMF ¶ 59, saying: "This statement is focused on what is intended to be done, rather than what has been done so far.  Co-defendant does not specify what initiatives [it] is currently developing."  PRDSMF ¶ 59.

DSMF ¶ 59 is not merely focused on intention; instead, it asserts that some actions are already underway.  Further, the declaration under penalty of perjury supports this assertion at the summary judgment stage.  *See Reyes Decl.* ¶ 25.  As far as DSMF ¶ 59 not specifying which initiatives are underway, Plaintiffs are correct, but that is beyond the scope of the fact asserted.  The Court, therefore, admits DSMF ¶ 59 as submitted.

[66]    DSMF ¶ 60 states: "The Puerto Rico 911 Emergency System announced what it conceives to be an educational campaign focused on victims of gender violence, which includes messages to the deaf community about using text messaging to seek assistance."

Plaintiffs qualify DSMF ¶ 60, saying: "There is no evidence of an 'educational campaign.' It is merely an informational message supposedly directed at the deaf community, but it does not specify where or when this information was issued.  Additionally, the statement is not accessible as it lacks sign language, so if it is directed at deaf people, many of them will not be able to understand it." PRDSMF ¶ 60.

The evidence of the program is found as Exhibits N and O of the DSMF.  *See* DSMF, Attach. 14, *Un texto puede salvar tu vida*; DSMF, Attach. 15, *Sistema 911 anuncia campaña educativa enfocada en víctimas de violencia de género y comunidad sorda*.

Puerto Rico Local Rule of Civil Procedure 5(c) requires that all documents not in the English language, like these exhibits, be "accompanied by a certified translation into English" that meets certain criteria.  These translations do not exist in the record. As a result, the Court does not consider the exhibits as support for the fact and does not admit DSMF ¶ 60.

have failed to present any meaningful factual allegations to support their claims." *Id.*
at 2.  To the contrary, the Appearing Defendants maintain, "the Commonwealth of
Puerto has made significant strides in improving access and services for the deaf
community." *Id.*  "Additionally," they say that "the Judiciary has exceeded the
requirements of Title II of the ADA in providing benefits to the deaf community." *Id.*
By Appearing Defendants' estimation, "Plaintiffs' portrayal of the situation is
baseless and unsupported by facts." *Id.* at 3.

### 1.    The Statute of Limitations Period Has Passed

Before delving deeper into the facts of Plaintiffs' Title II claims, Appearing
Defendants contend that Plaintiffs' claims against the Department of Consumer
Affairs, the Department of State of Puerto Rico, and the Administration of Vocational
Rehabilitation are time barred.  *Id.* at 7-10.  This is so, they argue, because Title II
does not establish a limitations period, so "claims under the ADA borrow the most
analogous statute of limitations from Puerto Rico law."  *Id.* at 7 (citing *Nieves-
Márquez v. Puerto Rico*, 353 F.3d 108, 118-19 (1st Cir. 2003)).  In looking for the most
analogous state-law statute of limitations, Appearing Defendants aver that "[c]ourts
apply either the state's personal injury statute or the state's analogous disability
discrimination statute." *Id.* (citing *Skidmore v. Am. Airlines, Inc.*, 198 F. Supp. 2d
131, 135 (D.P.R. 2002)).  Appearing Defendants say that regardless of which statute
is used here, a one-year limitations period applies as Article 1802 of the Puerto Rico
Civil Code, the provision under which personal injury actions are brought, and Law
44, Puerto Rico's local disability discrimination statute, both share a one-year

limitations period.  *Id.* (citing *Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 119-20 (D.P.R. 2011)).

Appearing Defendants aver that "the Supreme Court of the Commonwealth of Puerto Rico has established that the statute of limitations begins to run the moment the aggrieved party becomes aware of the damage suffered." *Id.* at 8 (citing *Delgado Rodríguez v. Nazario de Ferrer*, 21 P.R. Offic. Trans. 342 (1988)).  Therefore, by their estimation, "any alleged violations of the ADA occurring on or before February 5, 2020, are time-barred."  *Id.*  As "discovery showed that Plaintiffs did not visit the [agencies] 'within the one year' . . . ¶ 32, ¶34, and ¶35 of the Amended Complaint are time barred and should be dismissed." *Id.*

### 2.    Claims Lack Sufficient Facts

Next, Appearing Defendants argue that even though Plaintiffs are qualified individuals and thereby meet the first requirement to state a valid claim under Title II, Plaintiffs failed to allege facts to meet the second and third prongs, namely that Appearing Defendants excluded Plaintiffs from participation, denied them a service, or otherwise discriminated against them, and that such exclusion, denial, or discrimination was due to their disability.  *Id.* at 10-11 (citing *Parker v. Univ. de P.R.*, 225 F.3d 1, 4 (1st Cir. 2000)).  Instead, Appearing Defendants argue, "the evidence in this case shows that [they] did not discriminate against Plaintiffs due to their disability," *id.* at 11, and instead "affirmatively accommodated plaintiffs' disability when needed and helped Plaintiffs receive the requested service."  *Id.* at 12.

### 3.    Equitable Remedies Are Not Warranted

Appearing Defendants then assert that "Plaintiffs are not entitled to declaratory relief or a permanent injunction requiring the undertaking of remedial measures because co-Defendants have established the necessary measures to ensure compliance with Title II." *Id.* at 20 (emphasis omitted).  First, Appearing Defendants say that "Plaintiffs have not suffered any type of irreparable harm because they were not excluded from participation or denied service." *Id.* at 22 (citing *Reid v. Donelan*, 2 F. Supp. 3d 38, 47 (D. Mass. 2014)).  Appearing Defendants also contend that "the public interest will be disserved by the requested permanent injunction" because they "have already put in place all the necessary measures to ensure compliance with Title II of the ADA" and that the injunction would "interfere with the measures that are currently being implemented." *Id.* at 23.

Appearing Defendants finally assert that since they "have implemented measures in favor of the deaf community, Plaintiffs request to define past conduct is unnecessary." *Id.* at 24 (citing *Mills v. State of Me.*, 118 F.3d 37, 55 (1st Cir. 1997); and *Brown v. Rhode Island*, 511 F. App'x 4, 6 (1st Cir. 2013)).

**B.    Anixa Santiago-Rivera and Manuel García-Castro's Opposition[67]**

**1.    The Statute of Limitations Period Has Not Passed**

Plaintiffs claim that their Title II claims are not time-barred.  *Pls.' Opp'n* at 4.
They contend that "the statute of limitations that operate[s] for claims under the
Americans with Disabilities Act (ADA) is four (4) years," not the one-year statute of
limitations Appearing Defendants advocate for.  *Id.* at 4 (citing *Mercado v. Puerto
Rico*, 814 F.3d 581 (1st Cir. 2016)).  Plaintiffs aver *Mercado* stands for the proposition
that "a four-year catch-all limitations period under 28 U.S.C. § 1658 applies to claims
arising under the ADA, including those resulting from amendments to the ADA in
2008."  *Id.* (citing *Mercado*, 814 F.2d at 582).  They also claim "[t]he Supreme Court's
decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004), further
supports this conclusion, as it found that 28 U.S.C. § 1658 applies when an
amendment to an existing statute creates new rights of action and corresponding
liabilities."  *Id.*

---

[67]    In their opposition, Plaintiffs request that the Court grant their "Cross Motion for Summary
Judgement."  *Pls.' Opp'n* at 10.  The docket shows that Plaintiffs filed an emergency motion for
extension of time to file a cross motion for summary judgment.  *See Em. Mot. for Extension of Time
Until April 3, 2023 to File Pls.' Cross Mot. for Summ. J.* (ECF No. 216).  There were no filings between
that filing and April 3, 2023.  On April 3, 2023, Plaintiffs filed a response to the Appearing Defendants'
statement of uncontested material facts and an opposition to the Appearing Defendants' motion for
summary judgment.  *See* PRDSMF (ECF No. 217); *Pls.' Opp'n* (ECF No. 218).  Plaintiffs' opposition
is not titled or presented as a motion for summary judgment despite the language noted above.  Further,
the request for granting the cross motion for summary judgment is the only reference to this cross-
motion.  Moreover, Puerto Rico Local Civil Rule 56(b) provides that "[a] motion for summary judgment
shall be supported by a separate, short, and concise statement of material facts, set forth in numbered
paragraphs, as to which the moving party contends there is no genuine issue of material fact to be
tried."  As Plaintiffs have not complied with the local rule, the Court does not treat the opposition as
a cross motion for summary judgment and instead treats it as what it is: an opposition to the Appearing
Defendants' motion for summary judgment.

### 2.    An Issue of Fact Remains

Plaintiffs insist they have stated a valid claim under Title II.  *Pls.' Opp'n* at 2.
This is so, they argue, because they "were not provided equal access to prompt and
efficient court proceedings" since "due to their disability they had to endure a several-
hour wait for a process that only took about 15 minutes, solely because the Court of
Appeals did not have a certified interpreter available." *Id.*  Plaintiffs add that "if they
were able to hear they would not have [had] to wait such a long period of time." *Id.*
Plaintiffs cite *Rennie v. United Parcel Serv.*, 139 F. Supp. 2d 159 (D. Mass. 2001) for
the proposition that "whether (Defendant) acted reasonably in its accommodation . .
. <u>is a question of fact precluding summary judgment</u>." *Id.* at 3 (citing *Rennie*, 139 F.
Supp. 2d at 167) (first alteration and emphasis in Plaintiffs' opposition).  Therefore,
Plaintiffs contend that whether "providing an interpreter three hours later is indeed
a reasonable accommodation . . . is a genuine issue as to a material fact that must not
be decided in summary judgment." *Id.*

### 3.    Equitable Relief Is Warranted

Plaintiffs argue that the Appearing Defendants "have made no real efforts to
comply with Title II" and instead "act with a continuous discriminatory behavior."
*Id.*  Plaintiffs assert that:

> Under Title II, an entity must give "primary consideration" to the type
> of aid requested by the person with a communication disability.  In order
> to [] honor the person's choice, the entity must demonstrate that another
> equally effective means of communication is available or that the chosen
> means would result in a fundamental alteration or an undue burden.

*Id.* (quoting *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 64 (2d Cir. 2021)). Plaintiffs add that they "requested the provision of sign language [ASL] interpreters . . .. However, in all the public entities that the Defendants represent, the interpreters were denied or were provided with an unjustified delay." *Id.* at 7. Plaintiffs also take issue with the Appearing Defendants' "alleged initiatives, methods and accommodations," and find it "strange" that they do "not present a single document that can demonstrate something concrete." *Id.*

Plaintiffs assert they are entitled to a permanent injunction. *Id.* at 8. In their view, they meet the irreparable injury prong because their loss of equal access to services caused them "a great amount of emotional distress." *Id.* They add that "remedies available at law . . . are inadequate to compensate for the injury" because only injunctive relief ensures the Appearing Defendants' "actions do not harm the Plaintiffs or other deaf individuals," so that they are "able to enjoy equal access to the services of the Commonwealth and Judiciary of Puerto Rico." *Id.* As far as the public interest, Plaintiffs contend that:

> Our society as a whole suffers when we neglect the poor, the hungry, <u>the disabled</u>, or when we deprive them of their rights or privileges . . .. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time.

*Id.* at 9 (emphasis in *Pls.' Opp'n*) (quoting *Martínez v. U.S. Dep't of Health & Hum. Servs.*, 478 F. Supp. 3d 155, 187-88 (D.P.R. 2020)).

Plaintiffs also assert they are entitled to declaratory relief, *id.* at 8, as it "is required," *id.* at 9, "to define the legal rights and obligations of the parties in

anticipation of some future conduct," *id.* (quoting *Brown v. Rhode Island*, 511 F. App'x 4, 6 (1st Cir. 2013)), since Appearing Defendants "have not sufficiently proved to have implemented enough measures in favor of the deaf community." *Id.*

Plaintiffs' final argument is that the alleged measures taken by the Appearing Defendants "are not incompatible with a permanent injunction or declaratory relief." *Id.* (emphasis omitted).  First, they say that "the work of the Liaison Office is still developing and it is not yet capable of fulfilling the necessities of the deaf people of Puerto Rico." *Id.*  Put simply, Plaintiffs say, "there are no concrete measures in place to address the damages suffered by both the plaintiffs and the rest of the deaf community in Puerto Rico.  Therefore, a permanent injunction . . . could help to promote these measures and provide certainty to a community that desperately needs its problems to be finally solved." *Id.* at 10.

### C.    Appearing Defendants' Reply

Appearing Defendants use their reply to attempt to disprove Plaintiffs' arguments about the statute of limitations.  *See Defs.' Reply* at 2-5.  They argue that "[t]he four-year catch-all limitations period set forth in 28 U.S.C. § 1658 is inapplicable," *id.* at 2 (emphasis omitted), because it "does not operate automatically to all claims under ADA as Plaintiffs would like this Court to believe." *Id.*  Instead, Appearing Defendants argue that "[o]nly certain types of ADA discrimination claims, that are not at issue here, are subject." *Id.* (citing *Maggi v. Grafton Cnty. Dep't of Corr.*, 633 F. Supp. 3d 508,  at 514-15 (D.N.H. 2022)).

Appearing Defendants add that in *Jones* the Supreme Court "specifically stated that 28 U.S.C. § 1658 applies when an amendment to an existing statute creates new rights of action and corresponding liabilities. This did not occur to Plaintiffs claims under Title II of ADA." *Id.* at 3.

To the contrary, Appearing Defendants argue that:

> In the case at hand, Plaintiffs' claims under Title II have not been amended to create a new right of action, as established in *Jones*. While ADA was amended in 2008, those amendments did not affect the Title II claims alleged here. The amendments in 2008 increased the scope of a "disability." *See generally* ADA Amendments Act of 2008, P.L. 110-325, 1222 Stat. 3553. Plaintiffs' degree of disability is not in dispute in this case. (Docket No. 214, at p.11). Both Plaintiffs are deaf individuals who communicate primarily in American Sign Language ("ASL"). *Id.* In *Vázquez-Rodríguez v. Miranda*, 2017 WL 3588935 (D.P.R. Aug. 18, 2017), the Court held that a Plaintiff was ineligible for the expanded four-year statute of limitations under § 1658 because her claims were not "made possible" by the 2008 amendments to the ADA as the remedies Plaintiff sought were available from the statute's inception. The same can be applied in the instant case.

*Id.* at 3-4 (footnote omitted). In other words, Appearing Defendants claim that "Plaintiffs' Title II ADA claims were not 'made possible' by the 2008 amendments to the ADA but in fact were available to them prior to the amendments." *Id.* at 4. Therefore, Appearing Defendants reiterate that "[b]ecause Puerto Rico's analogous disability discrimination statute and its personal injury statute share the same one-year statute of limitations," "the statute of limitations for Plaintiffs' Title II ADA claim is one year." *Id.* (citing *Toledo-Colon*, 812 F. Supp. 2d at 119-20).

## IV.  LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

41

on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V. DISCUSSION

### A. Whether Plaintiffs' Title II Claims Against the Department of State, Department of Consumer Affairs, and Administration for Vocational Rehabilitation Fall Outside the Statute of Limitations

As noted above, the Appearing Defendants argue that the statute of limitations for Plaintiffs' Title II claims has lapsed for three agencies: the Department of State Trademark Division, the Department of Consumer Affairs, and the Administration for Vocational Rehabilitation. Plaintiffs disagree.

Title II does not specify a statute of limitations. *See* 42 U.S.C. § 12131 et seq.; *Toledo-Colon, v. Puerto Rico*, 812 F. Supp. 2d 110, 119 (D.P.R. 2011) ("Title II of the ADA and the Rehabilitation Act do not establish a limitations period"). "For federal causes of action [for which there is not a defined statute of limitations,] courts generally borrow analogous state law statutes of limitations, usually from personal injury statutes." *J.S.H. v. Newton*, 654 F. Supp. 3d 7, 16 (D. Mass. 2023) (citing *Nieves-Márquez*, 353 F.3d at 118-19). "However, if a cause of action 'arises under' a congressional act enacted after December 1, 1990, the statute of limitation is the four-year limitation under 28 U.S.C. § 1658." *Id.* (quoting *Jones*, 541 U.S. at 382). In other words, "[w]hat matters is the substantive effect of an enactment—the creation of new rights of action and corresponding liabilities—not the format in which it appears in the Code." *Id.*

The ADA was enacted on July 26, 1990. *See* 42 U.S.C. 126 § 12101, et seq. It was then amended, after December 1, 1990, in 2008. *See* ADA Amendments Act of 2008, Pub. L. No. 110-326. This "amendment to an existing statute is no less an 'Act of Congress' than a new, stand-alone statute." *Jones*, 541 U.S. at 381. The ADA Amendments Act (ADAAA) created new rights of action and corresponding liabilities by rejecting multiple Supreme Court holdings that "narrowed the broad scope of protection intended to be afforded by the ADA." ADA Amendments Act of 2008, Pub. L. No. 110-325 (ADAAA). Similarly, the ADA Amendments Act also amended and broadened the definition of disability. *See id.* Therefore, it is plausible that the 28 U.S.C. § 1658 statute of limitations can apply to disability claims brought under the ADAAA.

*Mercado v. Puerto Rico*, 814 F.3d 581 (1st Cir. 2016) provides an example. The *Mercado* Court found that the plaintiff's claims in that case did "'necessarily depend' on that change," 814 F.3d at 588 (quoting *Jones*, 541 U.S. at 383), because the amendments allowed Mercado "to plead and prove one fewer element of her 'regarded as' claims than she would have been required to plead and prove under the ADA as it existed prior to those amendments." *Id.* Put differently, "[a]n amendment to a federal statutory scheme that affords the opportunity to seek a remedy not theretofore available fits comfortably within the purview of section 1658." *Millay v. Me. Dep't of Lab., Bureau of Rehab., Div. for Blind & Visually Impaired*, 762 F.3d 152, 155-56 (1st Cir. 2014) (citing *Baldwin v. City of Greensboro,* 714 F.3d 828, 834

(4th Cir. 2013); and *Middleton v. City of Chicago,* 578 F.3d 655, 659-60 (7th Cir. 2009)).

The question before the Court is thus whether it should borrow from analogous state law statutes of limitations or apply the catch-all four-year limitations period prescribed by 28 U.S.C. § 1658. If Plaintiffs' action was made possible by the post-1990 enactment, the Court must apply the four-year period; if not, the Court must look to the state statutes. *See Jones*, 541 U.S. at 382.

There are three claims at issue here. The first is Plaintiffs' claim that when they "visited the Department of Consumer Affairs in Bayamón, Puerto Rico," no interpreter was "available" or "could be provided." *Am. Compl.* ¶ 32. In the second claim, Plaintiffs allege that when they "visited the Department of State of Puerto Rico, trademarks division" they "faced the same type of problems." *Id.* ¶ 34. The third claim alleges Plaintiffs "faced the same type of problems" when they "visited the [AVR] in Bayamón, Puerto Rico." *Id.* ¶ 35. Plaintiffs' allegation that Appearing Defendants "unlawfully discriminated against them" by "failing to provide them with a sign language interpreter" underpins each of these claims. *Id.* at 2.

Plaintiffs do not specify which, if any, of the ADAAA changes made their claims possible. *See generally Pls.' Opp'n.* Nor does it seem they could have. While some individuals could bring claims under the ADA Amendments Act that they could not bring under the 1990 version, *see Mercado*, 814 F.3d at 590, Plaintiffs do not fall in that camp.

Here, Plaintiffs are deaf individuals, and they point to no precedent, and the Court is aware of none, that indicates that their disability would not readily be captured by the ADA pre-ADAAA.  *See*  42 U.S.C. § 12101(2) ("The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual"); *Lesley v. Hee Man Chie*, 250 F.3d 47, 55 (1st Cir. 2001) (citing favorably decision that issued summary judgment against doctor who refused to treat a deaf patient on the ground that all deaf people are high risk).  Absent such an indication, the Court cannot conclude that Plaintiffs' "legal claims 'necessarily depend'" on the ADAAA amendments, *see Mercado*, 814 F.3d at 588 (quoting *Jones*, 541 U.S. at 384), and therefore "arise under" an Act of Congress passed after December 1, 1990.  *See* 28 U.S.C. § 1658.  As follows, § 1658's catch-all provision does not apply.

If, as here, § 1658's catch-all provision does not apply, then "courts generally borrow analogous state law statutes of limitation, usually from personal injury statutes." *Newton*, 654 F. Supp. 3d at 16 (citing *Nieves-Márquez*, 353 F.3d at 118-19); *accord Toledo-Colon*, 812 F. Supp. 2d at 119.  "Law 44 is Puerto Rico's local disability discrimination statute, and like Article 1802, [the Puerto Rico Civil Code's negligence provision,] it has a one-year limitations period.  Accordingly, under either statute that could apply, the applicable limitations period for ADA and Rehabilitation Act claims is one year." *Toledo-Colon*, 812 F. Supp. 2d at 119-20 (internal citation omitted) (citing *Skidmore*, 198 F. Supp. 2d at 135); *accord Vázquez Robles v. CommoLoCo, Inc.*, 252 F. Supp. 3d 111, 114 (D.P.R. 2017).

As the Court concludes Plaintiffs' Title II claims arise under a statutory provision that took effect before December 1, 1990, state statute of limitations law applies.

Therefore, Plaintiffs must demonstrate that less than one year has passed between the date of their injury and them filing their complaint.[68]  In their Complaint filed on February 5, 2020, Plaintiffs allege the alleged discrimination underpinning each of their Title II claims occurred "within the past year."  *Compl.* ¶¶ 31, 33, 34. They claim the same in their Amended Complaint filed November 2, 2020.  *Am. Compl.* ¶¶ 32, 34, 35.  Appearing Defendants argue that the "evidence obtained during discovery conclusively shows that Plaintiffs did not visit the [relevant agencies] 'within the one year' as alleged in the Amended Complaint."  *Defs.' Mot.* at 10.  Plaintiffs do not contest this conclusion and instead now insist the one-year limitations period does not apply.

As explained above, the one-year statute of limitations does apply.  However, Plaintiffs have not pointed to any facts in the record that show the alleged discrimination happened within one year of them filing their complaint.  After a review of the record, the Court remains aware of none.  To the contrary, as Appearing Defendants point out, Plaintiffs testified that they visited the Department of Consumer Affairs and the Trademark Division in 2017,  *Defs.' Mot.* at 8-9 (citing

---

[68]    While state law determines the limitations period in this instance, "the date of accrual is a federal law question."  *Vázquez Robles*, 252 F. Supp. 3d at 114.  "Under federal law, the limitations period begins to run when the plaintiff 'knows or has reason to know of the injury which is the basis for his claim.'"  *Rodríguez-García v. Municipality of Caguas*, 354 F.3d 91, 96-97 (1st Cir. 2004) (quoting *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 41 n.5 (1st Cir. 1990)).  "One day after the date of accrual, the one-year statute of limitations begins to run."  *Vázquez Robles*, 252 F. Supp. 3d at 115.

DSMF ¶¶ 6-7, 9), and the Administration of Vocational Rehabilitation in 2004 and "no records indicating that Plaintiffs visited the ARV in the Bayamón region during the year 2019." *Id.* (quoting DSMF ¶¶ 67-68).[69]  In sum, the record shows there were visits to these government agencies in 2004 and 2017, which all fall outside the one-year statute of limitations for a complaint filed in 2020.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  As Appearing Defendants claim the issue is time barred and have "made a preliminary showing that there is no genuine issue of material fact," Plaintiffs had to produce specific facts to establish the presence of a trialworthy issue.  *McCarthy*, 252 F. App'x at 332.  In other words, Plaintiffs had to provide competent evidence that would enable a factfinder to decide in their favor on the disputed claim: whether the claim was brought in a timely manner.  *See Carroll*, 294 F.3d at 237 (quoting *Goldman*, 985 F.2d at 1116).  As Plaintiffs do not point to any facts that would allow a factfinder to determine they brought the claim within the one-year statute of limitations, there is no genuine dispute of material fact, and Appearing Defendants are entitled to judgment as a matter of law as to the Title II claims alleged in paragraphs 32, 34, and 35 of the Amended Complaint.

---

[69]     The Plaintiffs denied DSMF ¶ 67 and qualified DSMF ¶ 68, but in neither case provided any "specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue." *McCarthy*, 252 F. App'x at 332.

## B. Whether Plaintiffs State a Valid Title II Claim Against the Remaining Executive Agencies and the Court of Appeals[70]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014) (quoting 42 U.S.C. § 12132). In reading Title II, the First Circuit has said that to state an actionable claim, a plaintiff must establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Univ. de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000); *accord Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006).

The parties seem to agree that is the applicable standard. *Defs.' Mot.* at 10-11 (stating the standard); *Pls.' Opp'n* at 2 (quoting the same standard). While the Court agrees this is the general standard to succeed on a Title II claim, generalities do not suffice here as Plaintiffs have not clearly articulated which type of Title II claim they bring.

---

[70] Having resolved the statute of limitations arguments as regards the Department of State Trademark Division, the Department of Consumer Affairs, and the Administration for Vocational Rehabilitation, the Court does not apply the statute of limitations analysis to the other agencies because the Defendants have not discussed the issue with respect to any other agencies.

In *Sosa v. Mass. Department of Corrections*, 80 F.4th 15 (1st Cir. 2023), the Court of Appeals for the First Circuit reiterated there are three broad types of Title II claims: intentional discrimination, disparate impact, and failure to provide a reasonable accommodation. *See id.* at 31; *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144-45 (1st Cir. 2014).

"First, a plaintiff can assert disparate treatment on account of disability, i.e., that the disability actually motivated the defendant's challenged adverse conduct." *Nunes*, 766 at 144 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003)). Second, "in an appropriate case a plaintiff can claim that a government policy, though neutral on its face, 'fall[s] more harshly on one group than another and cannot be justified by business necessity,'" commonly known as a disparate impact claim. *Id.* at 145 (citing *Raytheon*, 540 U.S. at 52). "Finally, a plaintiff can pursue a third path, claiming that a public entity has refused to affirmatively accommodate his or her disability where such accommodation was needed to provide 'meaningful access to a public service,'" commonly known as a reasonable accommodation claim. *Id.* (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273-76 (2d Cir. 2003)).

While the same general standard may apply to each of these claims, how plaintiffs prove these elements differs for each type of claim. The Supreme Court has made clear that "[b]ecause 'the factual issues, and therefore the character of the evidence presented, differ . . .,' courts must be careful to distinguish between these theories." *Raytheon*, 540 U.S. at 53 (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252 n.5 (1981)). The Court proceeds accordingly.

Plaintiffs do not specify what type(s) of Title II claim(s) they are bringing. A review of the Amended Complaint suggests they could be bringing a Title II claim under all three theories of liability. *See Am. Compl.* at 3, 30-35, 40, 43 (alleging intentional discrimination); *see id.* at 2-3, 27, 31, 34-35, 39, 45-49 (alleging a disparate impact on the deaf community of Puerto Rico due to a policy, pattern, or practice); *see id.* at 7, 29-30, 34 (alleging denial of reasonable accommodation). However, "[o]rdinarily, statements in a complaint are not part of the summary judgment record." *Doherty v. Donahoe*, 985 F.Supp.2d 190, 195 (D. Mass. 2013) (citing *Sheinkopf v. Stone*, 927 F.2d 1259, 1262-63 (1st Cir. 1991)).

The Appearing Defendants argue they are entitled to summary judgment because Plaintiffs have provided no facts that would allow a reasonable factfinder to find there was discriminatory animus toward Plaintiffs. *See Defs.' Mot.* at 10-20. Given this focus on animus, commonly referred to as discriminatory intent or motive, which is only an element of an intentional discrimination claim, the Court takes it that Appearing Defendants seek summary judgment on intentional discrimination claims against them.

"Individuals can recover money damages under the ADA only if they prove intentional discrimination by the defendant." *Huertas Leon v. Colon-Rondon*, 376 F. Supp. 3d 167, 181 (D.P.R. 2019) (quoting *LeClair v. Mass. Bay Transp. Auth.*, 300 F. Supp. 3d 318, 325 (D. Mass. 2018)). "The First Circuit has also held that 'under Title II non-economic damages are only available when there is evidence of economic harm or animus towards the disabled." *Id.* at 181-82 (quoting *Carmona-Rivera v. Puerto*

50

*Rico*, 464 F.3d 14, 17 (1st Cir. 2006)).  Therefore, the Court also gathers the Appearing Defendants seek summary judgment to preclude Plaintiffs' requests for compensatory and non-economic damages for pain, suffering, and emotional distress.

In their opposition, Plaintiffs do not explicitly state the kind of Title II claims they are bringing, but they make arguments about reasonable accommodation, *see Pls.' Opp'n* at 2-4, and about "continuous discriminatory behavior."  *See id.* at 5-8. Therefore, the Court understands that Plaintiffs are pressing both intentional discrimination and reasonable accommodation claims.[71]

Given the filings before the Court, the Court proceeds under the understanding that Appearing Defendants' arguments for summary judgment are focused on the disparate treatment theory of liability.  The sole exception to this is the request for summary judgment as to the Puerto Rico Court of Appeals, which explicitly engages with reasonable modifications.  *See Defs.' Mot.* at 18.

### 1.  Department of Labor

As far as Plaintiffs' Department of Labor claims, *see Am. Compl.* ¶¶ 20-29, Appearing Defendants' argument boils down to two propositions: 1) that because "at the end, a sign language interpreter was present for García-Castro to receive the services that he requested from the Department of Labor of Puerto Rico" he was not

---

[71]   As Plaintiffs have not stated or even alluded to bringing a Title II claim under the theory of disparate impact, they have waived any such argument.  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" (cleaned up) (quoting *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988))).

excluded or denied benefits, and 2) that "[b]ased on the evidence presented, it can be conclusively stated that there was no discriminatory animus on the part of the employees of the Department of Labor toward Plaintiffs." *See Defs.' Mot.* at 13-14.

Even when viewing the record before the Court in the light most favorable to Plaintiffs, there is no fact that shows discriminatory animus toward Mr. García when he visited the Department of Labor. While the Department of Labor did not have interpreter services available for Mr. García during his November 26, 2019 visit, his appointment was rescheduled to December 5, 2019, on which date he ultimately received the sign language interpreter services he needed. DSMF ¶¶ 14, 16-17; PRDSMF ¶¶ 14, 16-17.

Mr. García was understandably dissatisfied in part because interpreters were not always provided. DSMF ¶ 19; PRDSMF ¶ 19. However, these facts are not enough; animus is required. A plaintiff may establish discriminatory animus by showing, for example, that discriminatory comments were made by a key decisionmaker or someone in a position to influence the key decisionmaker. *Rodriguez-Quiñones v. Lehigh Safety Shoe, Co.*, 736 F. Supp. 2d 445, 457-58 (D.P.R. 2010) (citing *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000)). It is unclear from the present record whether the employees who interacted with Mr. García are key decisionmakers but if they are, the "actions of the employees, including their attempt to provide an interpreter, do not demonstrate any prejudice, spite, or ill will." *Defs.' Mot.* at 13. If the employees are not key

decisionmakers, there likewise are not sufficient facts as there is no mention of the actions by other individuals at the Department of Labor.

To combat a preliminary showing that there is no genuine issue of material fact, "the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"  *McCarthy*, 252 F. App'x at 332 (quoting *Triangle Trading*, 200 F.3d at 2).  As the record does not reveal any genuine issue of material fact on the issue of discriminatory animus, the Court grants summary judgment for Appearing Defendants as to Plaintiffs' claims that the Department of Labor intentionally discriminated against them.  *See Celotex*, 477 U.S. at 322.

## 2.    Department of Transportation and Motor Vehicles

Appearing Defendants argue that "the evidence in this case showed that employees from [the DOT] offered to assist Santiago-Rivera even though there were no interpreters available" and that "[i]n the end, Santiago-Rivera was able to renew her license."  *Defs.' Mot.* at 14.  They add that the Amended Complaint "failed to include any allegations of intentional discrimination by [DOT] employees."  *Id.*  The Appearing Defendants view these facts together as "unequivocal evidence that no discriminatory animus was present."  *Id.* at 15.  Plaintiffs do not contradict this.

The facts in the record surrounding Ms. Santiago's visit to the DOT are sparse. In their entirety, they are that Mrs. Santiago has a valid driver's license, that she acknowledges the renewal process has improved somewhat now that she understands it more, that there were no DOT interpreters available when she visited the DOT,

and that DOT employees nonetheless attempted to assist her.   DSMF ¶¶ 3-5; PRDSMF ¶ 3-5.

Within these facts there is no genuine issue of material fact about whether there was animus; none of the facts suggests any animus, ill will, or discriminatory motive from the employees Ms. Santiago interacted with, or anyone else that might have been the key decisionmaker.   To combat this preliminary showing, Plaintiffs had to "produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue." *McCarthy*, 252 F. App'x at 332 (quoting *Triangle Trading*, 200 F.3d at 2).   As the record does not reveal any genuine issue of material fact on the issue of discriminatory animus, the Court grants summary judgment for Appearing Defendants as to Plaintiffs' claims that the Department of Transportation intentionally discriminated against them.   *See Celotex*, 477 U.S. at 322.

### 3.   Department of Education in Vega Alta

Appearing Defendants argue that "the Amended Complaint does not contain allegations of intentional discrimination regarding their visits to the Department of Education." *Defs.' Mot.* at 15.   In fact, Appearing Defendants argue that each time Plaintiffs visited the Department of Education, "they were afforded an interpreter," even if "according to Plaintiffs on some occasions the interpreters were not of good quality." *Id.*   Moreover, Appearing Defendants argue, Ms. Santiago "admitted that employees from the Department of Education were very nice and sweet when they requested a sign language interpreter, demonstrating that there was no

discriminatory animus on the part of the Department of Education against Plaintiffs." *Id.* at 16.

Once again, the facts surrounding the Plaintiffs' visits to the Department of Education are scant. In 2019, Plaintiffs visited the Department of Education about four times; the first time they were not given an interpreter, twice they were given an interpreter they thought was unqualified, and on their final trip they were given a qualified interpreter. DSMF ¶ 8; PRDSMF ¶ 8. Employees from the Department of Education of Puerto Rico were "very nice and sweet" when Plaintiffs requested a sign language interpreter. DSMF ¶ 62; PRDSMF ¶ 62.

Within these facts there is no genuine issue of material fact about whether there was animus; none of the facts suggest any animus, ill will, or motive from the employees Plaintiffs interacted with, or anyone else that might have been a key decisionmaker. To combat this preliminary showing that no genuine issue of material fact exists, Plaintiffs had to "produce specific facts, in suitable evidentiary form, to . . . . establish the presence of a trialworthy issue." *McCarthy*, 252 F. App'x at 332 (quoting *Triangle Trading*, 200 F.3d at 2). Plaintiffs failed to do so and cannot plausibly demonstrate animus, an essential element for intentional discrimination. As the record does not reveal any genuine issue of material fact on the issue of discriminatory animus, the Court grants summary judgment for Appearing Defendants as to Plaintiffs' claims that the Department of Education intentionally discriminated against them. *See Celotex*, 477 U.S. at 322.

### 4.    Puerto Rico Court of Appeals

Appearing Defendants argue that there was no exclusion from participation in or denial of benefits by the Court of Appeals, as "[t]he uncontested evidence . . . shows that when Plaintiffs visited the Clerk's Office . . ., they were provided with a qualified interpreter in a reasonable amount of time in compliance with Title II of the ADA." *Defs.' Mot.* at 18.  Specifically, they say that "[d]espite the Plaintiff's claims to the contrary, there was an interpreter immediately available on the day in question, albeit one with basic interpretation skills." *Id.* at 19 (citing *Am. Compl.* ¶ 40).  The Appearing Defendants also say that "the Puerto Rico Court of Appeals provided Plaintiff Manuel García Castro with a certified sign language interpreter from ASL Services Latino, PR, an entity hired by the Judiciary to provide sign language interpreter services" from 1:43 PM to 2:00 PM.  *Id.*

The Appearing Defendants contend "it was reasonable for García-Castro to wait for a couple of hours (the wait coincided with the Clerk Office's lunch period) to have a skilled sign language interpreter available at the Clerk's Office of the Puerto Rico Court of Appeals, an office that is mainly dedicated to the intake or filing of documents." *Id.* at 20.  Finally, Appearing Defendants maintain that "[s]ince, Plaintiff García-Castro received a reasonable accommodation there is no cause of action against the Judiciary and much less a discriminatory animus." *Id.*

Plaintiffs say they "were not provided equal access, to prompt and efficient proceedings, due to their disability they had to endure a several-hour wait for a process that only took about 15 minutes, solely because the Court of Appeals did not

have a certified interpreter available." *Pls.' Mot.* at 2.  Plaintiffs cite *Rennie v. United States*, 139 F. Supp. 2d 159 (D. Mass. 2001), for the proposition that whether a Defendant acted reasonably in its accommodation of a plaintiff is a question of fact precluding summary judgment.  *Id.* at 3.  Plaintiffs also cite *Hurley-Bardige v. Brown*, 900 F. Supp. 567 (D. Mass. 1995), *id.*, a case where the court denied summary judgment in part because a genuine issue of material fact existed as to whether "the accommodations provided by the agency were made in a timely manner."[72]  *Hurley-Bardige*, 900 F. Supp. at 572.

Plaintiffs contend that under Title II, "an entity must give 'primary consideration' to the type of aid requested by the person with a communication disability," which was not done in the case of Mr. García when he visited the Court of Appeals.  *Pls.' Mot.* at 5 (quoting *Vega-Ruiz v. Northwell Health*, 992 F.3d 61 (2d Cir. 2021)); *see also* U.S. DEP'T OF JUST., C.R. DIV., DISABILITY RTS. SECTION, ADA REQUIREMENTS, EFFECTIVE COMMUNICATION (2014), https://www.ada.gov/effective-comm.pdf.

### a.    Disparate Treatment Claim

On July 17, 2019, Mr. García visited the Clerk's Office of the Puerto Rico Court of Appeals at 10:47 AM and requested sign language interpreter services.  DSMF ¶ 20; PRDSMF ¶ 20.  The Clerk's Office initially communicated with Mr. García

---

[72]    While the *Hurley-Bardige* court was presiding over a claim brought under the Rehabilitation Act, the reasoning in *Hurley-Bardige* applies with equal force in this Title II claim.  *See Parker*, 225 F.3d at 4 ("Title II, the provision at issue here, prohibits discrimination against person with disabilities by 'public entities' and is modeled on § 504 of the Rehabilitation Act.  In applying Title II, therefore, we rely interchangeably on decisional law applying § 504" (internal citations omitted)).

through an individual, described by Appearing Defendants as a sign language interpreter from the court's Marshall's Office, who assisted Mr. García in completing the required form. DSMF ¶ 21; PRDSMF ¶ 21. The Director of Administrative Services of the Puerto Rico Court of Appeals requested that sign language interpretation services be provided that same day at 1:30 PM, and interpreter services were provided to Mr. García from 1:43 PM to 2:00 PM via a certified sign language interpreter from ASL Services Latino, PR, an entity hired by the Judiciary to provide sign language interpreter services. DSMF ¶ 22-23; PRDSMF ¶ 22-23.

Again, there are no facts before the Court, even when viewed in the light most favorable to Plaintiffs, that are sufficient to support an intentional discrimination claim. Mr. García received interpreter services twice on the day he visited the Court of Appeals. He protests about the delay in the provision of interpreter services of the quality he required, but that is not enough for a disparate treatment claim. Even if the Court were to consider this delay a denial of service, Mr. García's claim would fail at the third prong as there is no fact in the record from which the Court can infer there was any animus against him.

As the record does not reveal any genuine issue of material fact on the issue of discriminatory intent or motive, the Court grants summary judgment to Appearing Defendants as to Plaintiffs' claims that the Puerto Rico Court of Appeals intentionally discriminated against them. *See Celotex*, 477 U.S. at 322.

### b.   Reasonable Accommodation Claim

A successful "Title II claim premised on a failure to provide a reasonable accommodation . . . alleges that (1) due to the claimant's disability, he needs an individualized change to a public entity's facially neutral policies, practices, or procedures if he is to effectively access some opportunity; but (2) the public entity unjustifiably failed to make that change." *Sosa*, 80 F.4th at 31 (citing *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021)).

There is no dispute that due to his disability Mr. García needed an individualized change to the Court of Appeals' general procedure to effectively file a motion for in forma pauperis status.  The disagreement between the parties is about whether the Court of Appeals "unjustifiably failed to make that change."  *Sosa*, 80 F.4th at 31.

Appearing Defendants justify not having a skilled sign language interpreter ready for Mr. García by saying that the Clerk's Office of the Puerto Rico Court of Appeals "is mainly dedicated to the intake or filing of documents."  *Defs.' Mot.* at 20. The Court also understands their point that "Title II requires only reasonable modifications to programs and facilities and in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservations interests, or effect a fundamental alteration in the nature of the service," *id.* (citing *Toledo v. Sánchez*, 454 F.3d 24, 39 (1st Cir. 2006)), to suggest that an undue burden would befall the Court of Appeals if it were provide the interpreter service.

Appearing Defendants, however, have failed to demonstrate that there is no genuine question of material fact. There is. The parties dispute whether the delay from 10:47 AM until 1:43 PM to provide certified interpreter services for Mr. García was a justifiable delay. Appearing Defendants cite no caselaw that supports the proposition that receiving services after a delay cannot be considered a failure to reasonably accommodate someone's disability, and the Court is aware of none. In fact, the opposite is true. Plaintiffs cite *Hurley-Bardige*, a case where the court denied summary judgment in part because a genuine issue of material fact existed as to whether "the accommodations provided by the agency were made in a timely manner." 900 F. Supp. at 572. The First Circuit has recognized the principle that "unreasonable delay may amount to failure to provide reasonable accommodations." *Valle-Arce v. P.R. Ports Auth.*, 651 F.3d 190, 200 (1st Cir. 2011) (citing *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 68-69 (1st Cir. 2010); and *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 25 (1st Cir. 2004)).

Appearing Defendants are correct that there are limits to what makes an accommodation reasonable and that undue financial and administrative burden must be considered. They are correct as far as they go. "Relevant 'factors to aid in determining whether a delay was reasonable or unreasonable . . . include[e] the length of the delay, the reasons for the delay, whether the [plaintiff] was offered any alternative accommodations while evaluating a particular request, and whether the [defendant] has acted in good faith." *See Olson v. Chao*, No. 3:17-cv-10970-KAR, 2019 U.S. Dist. LEXIS 167937, at *52 (D. Mass. Sept. 30, 2019) (discussing the

Rehabilitation Act). The Appearing Defendants may well have a good explanation for why there was more than a two-hour delay in getting an interpreter for Mr. García, but if so, it simply is not in the summary judgment record.

Thus, the Court of Appeals fails to demonstrate what the financial or administrative burden would be for the Court of Appeals. Moreover, the facts indisputably show a delay just shy of three hours before Mr. García was able to receive the service he is required to have equal access to—a service that only took seventeen minutes to provide once the interpreter arrived. *See* DSMF ¶¶ 20, 22-23; PRDSMF ¶ 20, 22-23. Whether the three-hour delay was justified given the other constraints faced by the Court of Appeals is a "trialworthy issue," *McCarthy*, 252 F. App'x at 332, supported by "enough competent evidence to enable a factfinder to decide in its favor on the disputed claim[]." *Carroll*, 294 F.3d at 237. Drawing all reasonable inferences in favor of the nonmoving party, as the Court must, *Ophthalmic Surgeons*, 632 F.3d at 35, the Court concludes Appearing Defendants are not entitled to summary judgment because — absent evidence justifying the delay — a factfinder could find in Plaintiffs' favor that the delay was not justified.

Accordingly, the Court denies summary judgment to Appearing Defendants as to Plaintiffs' claims against the Puerto Rico Court of Appeals for having failed to reasonably accommodate their disability.

## C.   Whether Plaintiffs State a Valid Title II Claim Against the Government of Puerto Rico for Shutting Down 9-1-1 Call Centers

Appearing Defendants argue that "plaintiffs failed to state a claim under Title III, as the complaint exclusively alleges a violation of Title II." *Defs.' Mot.* at 17. This

is so, they argue, because "Plaintiffs allege that co-Defendants intentionally violated 28 CFR § 35.162 by shutting down Puerto Rico's 9-1-1 call centers for less than a day due to the coronavirus pandemic" and that regulation is "related to Title III of the ADA, which applies to places of public accommodation and commercial facilities," not government entities regulated under Title II. *Id.* at 16.

Alternatively, Appearing Defendants argue that "this action cannot be considered a discriminatory act or a violation of the ADA" because "[i]n light of the COVID-19 pandemic . . . state or local government decisions, including orders to quarantine, close businesses, and impose other restrictions, were necessary exercise of police power to control the spread of the virus." *Id.* at 17 (citing *Am. Cruise Ferries, Inc. v. Vazquez Garced*, No. 20-1633(DRD), 2020 U.S. Dist. LEXIS 246065* (D.P.R. Dec. 17, 2020)). Appearing Defendants also cite *Toledo* for the proposition that "charges of discrimination can be negated if the incident can be applied neutrally to the disabled." *Id.* (citing *Toledo*, 454 F.3d at 32).

Plaintiffs do not respond to these arguments on the 9-1-1 service issue whatsoever.

To support their arguments about the 9-1-1 call centers, Defendants point to no record citation, assuming it exists, to support their position.[73] Federal Rule of Civil Procedure 56(c) requires that a party, like Defendants, that asserts that a fact

---

[73] Defendants submit a fact that was not admitted: "The Puerto Rico 911 Emergency System announced an educational campaign focused on victims of gender violence and the deaf community about using text messaging as a method to seek assistance." DSMF ¶ 60. For the reasons in footnote 69, the Court did not admit the fact. Regardless, this fact does not support Defendants' position as it does not speak to what occurred in the lead up to, or during, the 9-1-1 call centers being shut down and, as an isolated fact without context, would be irrelevant even if admitted.

cannot be genuinely disputed, support their assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials").

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As Defendants have not shown that there is no genuine dispute and have not otherwise presented the Court with facts on this issue, the issue has not been properly presented. The Court, therefore, does not reach the merits on this portion of the motion and dismisses it without prejudice. *See, e.g.*, *Pomerleau v. West Springfield Public Schools*, 362 F.3d 143 (1st Cir. 2004) (affirming dismissal for failure to comply with procedural rules).

### D.   Whether Plaintiffs Are Entitled to Equitable Remedies

#### 1.   Standards

"Four factors must be satisfied before a Court may unleash the full force of a permanent injunction: '(1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction.'" *Vázquez v. Surillo-Ruiz*, 76 F. Supp. 3d 381, 391 (D.P.R. 2015) (quoting *Asociacion de Educ. Privada de P.R., Inc. v. García-Padilla*, 490 F.3d 1, 8 (1st Cir. 2007)); *accord Greene v. Ablon*, 794 F.3d 133, 156 (1st Cir. 2015). "An injunction should not be granted

where 'a less drastic remedy' will suffice." *Greene*, 794 F.3d at 157 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010)).

"The Declaratory Judgment Act allows 'any court of the United States' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought,' but only '[i]n a case of actual controversy within [that court's] jurisdiction.'" *Duggan v. Martorello*, 596 F. Supp. 3d 158, 188 (D. Mass. 2022) (alterations in original) (quoting *Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 916 F.3d 98, 110-11 (1st Cir. 2019) (quoting 28 U.S.C. § 2201(a))). "[T]here is not 'the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not[.]'" *Id.* (alterations in original) (quoting *Méndez-Núñez*, 916 F.3d at 111 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007))). "Essentially, however, 'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment[.]'" *Id.* (alteration in original) (quoting *Méndez-Núñez*, 916 F.3d at 111 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941))).

## 2.    Application

Neither a permanent injunction nor a declaratory judgment is an independent cause of action or claim. They are also not defenses. Instead, they are equitable remedies which the Court may grant in its discretion. Therefore, the Court is

unconvinced that a party can move for summary judgment on a nonmovant's request for an equitable remedy. *See* FED. R. CIV. P. 56 ("A party may move for summary judgment, identifying *each claim or defense*—or part of each claim or defense—on which summary judgment is sought" (emphasis supplied)).

Moreover, "[i]n the permanent injunction context, 'the movant must show actual success on the merits.'" *VAMOS, Concertacion Ciudadana, Inc. v. Puerto Rico*, 494 F. Supp. 3d 104, 126 (D.P.R. 2020) (quoting *Largess v. Supreme Judicial Court*, 373 F.3d 219, 223 n.2 (1st Cir. 2004); and citing 1 MOORE'S FEDERAL PRACTICE AND PROCEDURE § 10A.23 (2020)). At the summary judgment stage, the Court has not had the occasion to address the merits of all claims brought by Plaintiffs against the Appearing Defendants. Thus, the Court does not yet know whether Plaintiffs will succeed on the merits and accordingly defers on ruling on whether a permanent injunction is an appropriate remedy. The Court also remains unconvinced the facts show that there is a substantial controversy between parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duggan*, 596 F. Supp. 3d at 188.

## VI.   SUMMARY

The Court concludes Plaintiffs' claims against the Department of Consumer Affairs, Department of State, and Administration for Vocational Rehabilitation are time barred and grants summary judgment for the Appearing Defendants.

The Court concludes Plaintiffs have not, even viewing the facts in the light most favorable to them as the nonmovants, plausibly alleged claims for intentional

discrimination against the Department of Labor, Department of Transportation, Department of Education, or the Puerto Rico Court of Appeals.    The Court grants summary judgment for the Appearing Defendants.

The Court concludes Plaintiffs have plausibly alleged a claim for a failure to accommodate in violation of Title II of the ADA against the Puerto Rico Court of Appeals and denies summary judgment.

The Court does not reach whether Plaintiffs have plausibly alleged that the commonwealth of Puerto Rico intentionally violated 28 C.F.R. § 35.162 and dismisses this portion of the motion without prejudice.

## VII.  CONCLUSION

The Court GRANTS in part, DENIES in part, and DISMISSES in part the Commonwealth of Puerto Rico, Maite Oronoz-Rodriguez, and Pedro R. Pierluisi Urrutia's Motion for Summary Judgment (ECF No. 214).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2024